CHOCTAW, OKLAHOMA & GULF RAILROAD COMPANY v. BASKINS.

Opinion delivered April 7, 1906.

1. RAILROAD—CROSSING—DUTY OF TRAVELER.—A traveler approaching a railroad crossing must take notice of the fact that it is a place of danger, and must not only look and listen for the approach of trains before he goes upon the track, but must continue to look and listen until he has passed the point of danger. (Page 358.)

2. SAME—CONTRIBUTORY NEGLIGENCE OF TRAVELER.—Where deceased stopped on the highway at a railroad siding for half a minute while watching the passing of a regular train on the main track going west, and was struck and killed by a work train fifteen or twenty feet away which was backed toward him from the opposite direction without noise or signals, it was a question for the jury whether, considering that deceased was blind in the eye next to the work train, and that it was his duty to look both ways, he failed to turn and look in each direction with sufficient frequency to acquit himself of negligence. (Page 359.)

3. INSTRUCTIONS—DUTY TO ASK.—A party who has not asked for a specific instruction in proper form upon a given theory can not complain of the failure of the court to give an instruction upon that theory. (Page 362.)

4. RAILROAD—CONTRIBUTORY NEGLIGENCE OF TRAVELER.—Where deceased was killed by a work train on a side track while waiting for a passenger train to pass on the main track, it was not error to refuse to charge that he was guilty of negligence if he could have waited for the passenger train to pass before going upon the side track, and

failed to do so, as the fact that he went upon the side track without waiting for the departure of the passenger train had no proximate relation to the injury.  (Page 362.)

5.  DAMAGES—EXCESSIVENESS.—An assessment of $2,000 as compensation for loss of a husband and father of industrious habits and with a life expectancy of about 17 years, and with an earning capacity of $400 a year, is not excessive.  (Page 363.)

Appeal from Perry Circuit Court; *Edward W. Winfield,* Judge; affirmed.

*E. B. Peirce* and *T. S. Buzbee,* for appellant.

1.  It was error to refuse defendant's request for a peremptory instruction.  A traveler upon the highway is bound to exercise ordinary care and diligence at the intersection of a railway to ascertain whether a train is approaching, in order to avoid collision with it.  If he fails to do what an ordinarily prudent person would do under the circumstances, he is guilty of negligence.  54 Ark. 431; 56 Ark. 457.  Under the facts in this case it was not necessary for appellant to prove affirmatively that appellee failed to look and listen, because it appeared that if he had looked he could have seen.  If the passenger train moving out was making noise so as to affect his hearing the approaching freight train, it was the more incumbent on him to look, and not to place himself where by reason of a defect in one eye he could not see the train.  61 Ark. 549; 56 Ark. 271; 61 Ark. 617. See also 62 Ark. 156; 65 Ark. 235; 74 Ark. 372.

2.  The court erred in modifying and giving as modified the ninth instruction asked by appellant.  That it was the duty of deceased to continue both to look and listen in both directions is the law as settled by this court, and it was material to appellant that the jury be so instructed.  69 Ark. 138; 74 Ark. 372.

3.  In view of the age of deceased, the testimony as to the number in his family, only one of his children being a minor, his earning capacity, and the absence of evidence that he contributed anything to the support of his family, the verdict was excessive.

*J. F. Sellers* and *Jno. D. Shackleford,* for appellant.

1.  That it is the duty of one about to cross a railroad track to look and listen, and to use ordinary care for his own safety, is conceded; but whether or not deceased was guilty of contributory negligence was a question of fact for the jury under

proper instructions from the court. Instructions given at appellant's request covered very phase of the case. It will be presumed that the deceased was in the exercise of due care, until the contrary is made to appear. 48 Ark. 333; *Ib.* 460; 58 Ark. 125; 8 Am. Rep. 811; 18 Am. Rep. 407.

2. It is culpable negligence to push a train backward by a locomotive in a reversed position without warning and in the absence of a lookout. Elliott on Roads and Streets, 611. Under the circumstances, deceased, as a man of ordinary prudence, was not chargeable with same degree of care to look and listen as he would have been had the train been headed the other way. *Ib.* 616; 8 Am. & Eng. Enc. Law (2 Ed.), 420. Deceased had the right to assume that the train would not be pushed back until he could see that an exception was being made to the usual course; and in the latter case a watchman should have been on the rear car, and signals should have been given, to give warning. 2 Sherman & Redf. on Neg. (5 Ed.), § 471. See also 23 Am. & Eng. Enc. of Law (2 Ed.), 745.

McCULLOCH, J. This was an action brought by F. P. Baskins, as administrator of the estate of Owington Baskins, deceased, against the Choctaw, Oklahoma & Gulf Railroad Company to recover damages for alleged negligent killing of deceased. He was run over and killed by a train of cars operated by appellant at Casa, Ark., and damages for the benefit of the widow and next of kin of deceased in the sum of $2,000 were asked.

Appellant pleaded contributory negligence on the part of deceased, and it is contended now that the court erred in refusing to give a peremptory instruction to the jury to return a verdict in its favor.

The details of the injury, as related by witnesses, were as follows:

The railroad track runs due east and west, and the depot at Casa is situated on the north side of the main track. There is a side track south of the main track, and both intersect a street running due north and south immediately west of the depot. The injury occurred about five o'clock in the afternoon, and a few minutes before the arrival of a passenger train from the east a work train with a caboose or box car attached to the rear end came in from the east, and passed the station, and backed in

on the side track to await the arrival and departure of the passenger train. The rear end of the work train stopped on or near the street crossing mentioned above. When the passenger train arrived, deceased started toward the depot from one of the storehouses south of the track, and walked along the west side of the street, going north until he came within a short distance of the track, when he crossed the street diagonally, following a footpath which crossed the track on the east side of the street, and walked upon the side track, and stopped 15 or 20 feet east of the rear end of the caboose or box car. The witness who related these facts said that deceased stopped there from a half minute to a minute and a quarter, when the work train backed up and struck him, and that the end of the train was about 15 or 20 feet from him when it began to move. The work train had been standing there from three to five minutes. The passenger train was then moving out, and was making considerable noise, but no signals were given from the work train either by bell or whistle, and no lookout was kept from the rear end. Deceased was blind in his left eye, the eye on the side next to the work train. There is no evidence that deceased did not look for the moving train, except the fact that it was broad daylight, and he could have seen it if he had been looking that way at the time. It is evident from the testimony that deceased stopped momentarily on the side track awaiting the departure of the passenger train, which was then just moving out from the station, and the rear coach was passing deceased when he was struck by the backing work train.

It is not insisted that the evidence is insufficient to sustain a finding of negligence on the part of the men in charge of the work train in failing to give signals by bell or whistle and in failing to keep a lookout. This is conceded. But appellant contends that deceased could have seen the moving work train if he had looked, and that his failure to see it and get out of the way establishes negligence on his part which prevents a recovery. It is, of course, too plain for controversy that he could have seen the end of the car if he had been looking that way at the moment, but it does not necessarily follow that he was negligent in failing to see it. The doctrine has been repeatedly stated by this court that a traveler approaching a railroad crossing must take

notice of the fact that it is a place of danger, and must not only look and listen for the approach of trains before he goes upon the track, but must continue to look and listen until he has passed the point of danger. He must continue his vigilance until the danger is passed, and must look both ways up and down the track. *Railway Co.* v. *Cullen,* 54 Ark. 431; *Railway Co.* v. *Tippett,* 56 Ark. 457; *St. Louis, I. M. & S. Ry. Co.* v. *Martin,* 61 Ark. 549; *Martin* v. *L. R. & Ft. S. Ry. Co.,* 62 Ark. 158; *Little Rock & F. S. Ry. Co.* v. *Blewitt,* 65 Ark. 235; *St. L. & S. F. Ry. Co.* v. *Crabtree,* 69 Ark. 134; *St. L., I. M. & S. Ry. Co.* v. *Johnson,* 74 Ark. 372; *Tiffin* v. *St. Louis, I. M. & S. Ry. Co., ante,* p. 55.

But, as the traveler is required to look both ways for danger, it is obvious that he can not do so at precisely the same moment. It must be remembered that deceased was upon the track probably not more than half a minute, and in that time he was required to look toward the east as well as toward the west. He would have been guilty of negligence if he failed to do so. It does not appear from the evidence that he did not look both ways before as well as after he went upon the track. He may have done so, and the burden was upon the defendant to show that he did not do so. The work train was headed in an opposite direction, with the rear end standing upon or near the street crossing. There is no proof that deceased knew that an engine was attached to the cars on the side track; but if he did know, he might reasonably have assumed that the train would pull out of the switch forward and not backward. We do not mean to say that this state of facts justified deceased in ignoring the possibility or probability of the train backing toward him and in failing to keep a lookout for such emergency, but it was a circumstance for the jury to consider whether deceased, being at the time under obligation to look both ways for his own safety, might not, in the discharge of that duty, have reasonably relaxed his vigilance to some extent in looking toward the west where this train was situated, and consumed more time than he otherwise would have done in looking toward the east where there was also a possibility of danger. He might have done so consistently with due care. Though he was bound to look both ways, the frequency with

which he was bound to change his view depended upon circum-
stances and the probability of danger to be apprehended, and of
this the jury were the judges.   The law required him to exercise
such degree of care in that respect as was reasonably necessary
to discover the danger and avoid injury.

The train was standing within fifteen or twenty feet of him,
backed up to the street crossing and headed in the other direc-
tion; he had doubtless observed its position before and perhaps
after he went upon the track, and seen that it was motionless; it
was put in motion noiselessly and amidst the noise of the depart-
ing passenger train, and there is no evidence that he did not look
in that direction the moment before it was set in motion.   Under
those circumstances, and with the burden upon appellant to show
that deceased did not exercise proper care, how can we say, as
a necessary conclusion from this evidence, that he was guilty of
negligence in failing to discover the motion of the car over a
space of fifteen or twenty feet?   We can not do so.   That was
for the jury, and we will not disturb a verdict based upon a con-
clusion they reached upon that state of the proof.

The following language of the New York Court of Appeals,
in discussing the same question upon a somewhat similar state
of facts, is quite appropriate here:

"Whether she looked exactly at the right moment, or in
each direction in proper succession, or from the place most likely
to afford information, can not be determined as a matter of law,
and whether upon the whole, and in view of all the surrounding
circumstances, including the negligent conduct of defendant,
she exercised due care, was a question which the trial court could
not properly decide for itself, but was bound to submit to the
jury as one which they alone could answer." *Greany* v. *Long
Island R. Co.,* 101 N. Y. 419.

Learned counsel for appellant press upon our attention, with
much force, as conclusive of this case, the decision of this court
in *St. Louis, I. M. & S. Ry. Co.* v. *Martin.* 61 Ark. *supra;* but we
can not agree with them that that case is decisive of this.   We do
not undertake to depart from the principles of law announced in
that case, nor do we recede from its application to the facts
of that case.   But it is not applicable to the facts of the case

at bar. In that case the injured party went upon the track at night, and the witness testified that the noise of the approaching train was plainly heard—that he heard it plainly, though his sense of hearing was imperfect. So the court said, the injured person's sense of hearing being unimpaired, that he must have heard the noise and failed to avoid the injury, and was therefore guilty of contributory negligence. In the case at bar, though it was the duty of deceased to look out for the danger, it was for the jury to say whether, considering all the circumstances and his duty to look in the other direction also, he failed to turn and look in each direction with sufficient frequency to acquit himself of negligence. *St. L., I. M. & S. Ry. Co.* v. *Tomlinson,* 78 Ark. 251.

"It will be presumed that the injured party was in the exercise of due care until the contrary is made to appear." *Little Rock & Ft. Smith Railway Co.* v. *Eubanks,* 48 Ark. 460; *L. R., M. R. & T. Railway Co.* v. *Leverett,* 48 Ark. 333; *Jones* v. *Malvern Lumber Co.,* 58 Ark. 125; *St. Louis, I. M. & S. Railway Co.* v. *Martin,* 61 Ark. *supra.*

The court, on motion of appellant, gave instructions to the jury covering generally the doctrine of contributory negligence and the duty of travelers going upon a railroad crossing to look and listen for the approach of trains. But the court refused to give an instruction asked by appellant containing a specific declaration as to the duty of the traveler to continue to look and listen until all danger be passed.

The instruction in question was modified by the court, and is as follows (that part which was stricken out by the court appears here in parentheses, and the addition thereto made by the court appears in italics) :

"You are instructed that a railroad track is, in itself, a warning of danger; and if you find that deceased went upon the side track of defendant, and stopped on said side track to wait for a train on the main line to pass, and that while on said side track he was backed over by a freight train (but that deceased could have waited for said passenger train to pass before going on to the side track, or) *and* by looking in the direction from which said freight train came could have seen it *and failed to do so,* and thereby *have* avoided being injured, *and such failure contri-*

*buted to the injury,* then he was guilty of negligence as a matter of law, and your verdict will be for the defendant, notwithstanding you may find that defendant was also guilty of negligence (and you are instructed in this connection that it was the duty of the deceased to continue to look and listen in both directions until all danger had passed)."

As we have already said, this court has repeatedly declared the rule that travelers upon a railroad crossing must maintain the required vigilance and continue to look and listen until the danger be passed; and if an instruction on that subject in proper form had been asked, the court should have given it. But the court should not have given an instruction containing erroneous statements of the law in other respects, and was not bound to give an instruction on the subject when none was asked in proper form. A party who has not asked for a specific instruction in proper form upon a given theory can not complain at the failure of the court to give an instruction upon that theory when the instructions given by the court are free from error. *Allison* v. *State,* 74 Ark. 444.

Now, the instruction, as framed by appellant, contained an erroneous statement of law, which was stricken out by the court, to the effect that, if deceased could have waited for said passenger train to pass before going on to the side track, and failed to do so, he was guilty of negligence. This was manifestly erroneous, and was properly stricken out by the court. The fact that deceased went upon the side track without waiting for the departure of the passenger train had no proximate relation to the injury. It might as well have been said that if he had remained at home that day, instead of coming to town and crossing the railroad track, he could have avoided the injury, and was, therefore, guilty of negligence. If deceased was guilty of negligence at all which was the proximate cause of the injury, it was in failing to look and listen for the moving train. With this objectionable part of the instruction stricken out, and the additions which were made, the court might well have given it to the jury without further subtraction; but it was a correct statement of the law in the form in which it was given; and if the defendant desired that the clause concerning the duty of the traveler to continue to look and listen should be retained

ARK.]     CHOCTAW, O. & G. RD. CO. v. BASKINS.          363

in the instruction, it should have made the request. Not having done so, it can not complain of the giving of an instruction which, as modified, was a correct statement of the law, nor of the refusal of the court to give an instruction which, without modification, was, as a whole, an erroneous statement of the law.

It is next urged that the assessment of $2,000 damages was excessive. Deceased was a stout, healthy man, 56 years of age, actively engaged in farming, with an earning capacity of from $400 to $500 per annum. He labored in the field himself, as well as superintended the work on his farm, and, as the testimony shows, made a good hand at labor. His wife and daughters and one of his sons (one of his children being a minor) lived with him on the farm. There is no direct proof of the amount of his contributions to the support of his family, but the presumption will be indulged that, as they lived with him on the farm, a reasonable amount of his earnings was contributed to their support. There is not, under those circumstances, an entire absence of proof of such contributions, as contended by appellant. We must presume that he discharged his duty, in some measure, to them. An assessment of $2,000 as compensation for loss of a husband and father of industrious habits, and with a life expectancy of about 17 years, and with an earning capacity of $400 a year, can not be said to be excessive.

The proof of the amount of contributions to the support of his family by deceased could have been more specific and satisfactory, but we think it was sufficient to justify a verdict for the amount awarded by the jury.

Judgment affirmed.