TAYLOR *v.* GRANT LUMBER COMPANY.

Opinion delivered April 25, 1910.

1.  NEW TRIALS—DISCRETION OF TRIAL COURTS.—Trial courts are vested with a large discretion in the matter of granting new trials, especially

upon the weight of evidence, and such discretion will not be inter-
fered with unless it be made to appear that it was improvidently
exercised.   (Page 568.)

2.  MASTER AND SERVANT—INJURIES NOT IN COURSE OF EMPLOYMENT.—
Where an employee of a lumber company volunteered to go on a
logging train to doctor a sick mule, which was not in the course of
his employment, and was injured by the company's negligence, he will
not be entitled to recover.  (Page 569.)

Appeal from Jefferson Circuit Court; *Antonio B. Grace,*
Judge; affirmed.

*Austin & Danaher,* for appellant.

The Fellow Servant Act applies to logging roads.   69 L.
R. A. 887; 61 *Id.* 249.   Deceased being in defendant's employ
at the request of its servant foreman, he was not a trespasser,
and was entitled to the same protection as other employees.   1
Hurl. & N. 773; L. R. 2 Ex. 30; 11 Ex. 832; 6 Jur. (U. S.)
53; 69 Pa. 210; 48 Miss. 112; 43 O. St. 224; 58 Ark. 318.   The
foreman had authority to make such requests.   17 Colo. 564;
31 Am. St. 340; 12 Am. St. 422; 119 Ind. 455; 24 Am. St.
322; 19 *Id.* 180; 34 *Id.* 283; 36 Am. R. 382; 58 Ark. 175.   A
servant does not assume the risk of the negligence of fellow
servants.   122 Fed. 193; 196 U. S. 51; 178 Mass. 251; 101
Am. St. 660.

*Taylor & Jones* and *Daniel Taylor,* for appellee.

The court's discretion in granting a new trial will not be
disturbed, unless manifestly abused.   34 Ark. 632; 93 S. W. 18;
46 S. W. 202; 79 S. W. 803; 86 S. W. 379; 93 S. W. 871;
81 S. W. 907; 105 S. W. 1061; 105 S. W. 1098; 83 S. W. 297;
74 S. W. 976; 71 S. W. 425; 72 S. W. 20; 76 S. W. 502; 85
S. W. 357; 78 S. W. 312; 41 S. W. 215; 91 S. W. 1031; 108
N. W. 824; 108 N. W. 839; 99 S. W. 722; 47 Mo. 50.

BATTLE, J.   Rosetta Taylor, as administratrix of James M.
Taylor, deceased, brought an action against Grant Lumber Com-
pany, and recovered a judgment against it.   The defendant
moved for a new trial, which the court granted.   From this
order granting a new trial the plaintiff has appealed, she stipu-
lating that judgment absolute may be rendered in this court.

In *Catlett* v. *Railway Co.,* 57 Ark. 461, 466, Chief Justice COCKRILL, delivering the opinion of the court, said: "The Constitution provides that 'judges shall not charge juries with regard to matters of fact, but shall declare the law.' Art. 7, § 23. This provision shears the judge of a part of his magisterial functions, but it confers no new power upon the jury. It was the jury's province before this provision was ordained to pass only upon questions of fact about which there was some real conflict in the testimony, or where more than one inference could reasonably be drawn from the evidence. The Constitution has not altered their province. It commands the judge, to permit them to arrive at their conclusion without any suggestion from him as to his opinion about the facts. As * * * expressed in *Sharp* v. *State,* 51 Ark. 155, 'the manifest object of this prohibition was to give the parties to the trial the full benefit of the judgment of the jury as to facts, unbiased and unaffected by the opinion of judges.' If there is no evidence to sustain an issue of fact, the judge only declares the law when he tells the jury so."

The trial judge still has control of the verdict of the jury after and during the term it is rendered. Because of his training and experience in the weighing of testimony, and of the application of legal rules to the same, and of his equal opportunities with the jury to weigh the evidence and judge of the credibility of witnesses, he is vested with the power to set aside their verdicts on account of errors committed by them, whereby they have failed, in their verdict, to do justice and enforce the right of the case, under the testimony and the instructions of the court. This is a necessary counterbalance to protect litigants against the failure of the administration of the law and justice on account of the inexperience of jurors.

In *Catlett* v. *Railway Co.,* supra, Chief Justice COCKRILL further said: "In *Richardson* v. *State,* 47 Ark. 567, Judge SMITH says: 'It is the duty of the trial court to set aside a verdict which is clearly against the weight of the evidence,' and that injunction cannot be too often repeated; for, as he further explains, when the question of fact reaches us, we do not undertake to revise the discretion of the circuit judge in that respect, but inquire merely whether there is a failure of proof on a

material point. That is the marked distinction between the duty resting upon the trial and the appellate courts. To ascertain whether there is a failure of proof or whether the evidence is legally sufficient to warrant a verdict, the test is as follows: After drawing all the inferences most favorable to the verdict that the evidence will reasonably warrant, is it sufficient in law to sustain the verdict?"

In that case the court further held: "In jury trials where the evidence is not legally sufficient to sustain a verdict for plaintiff, it is the duty of the court to so declare the law. If the whole case appears to have been developed, a verdict for the defendant should be directed; if it is probable that the missing link in the evidence can be supplied, plaintiff should be permitted to take a nonsuit."

As said by the Supreme Court of Missouri in *Baughman* v. *Fulton,* 41 Southwestern Reporter, 215: "Trial courts have large discretion in the matter of granting new trials, especially upon the weight of the evidence; and this court will not interfere with such discretion unless it be made to appear that it was improvidently exercised." See cases cited.

In the case before us the preponderance of the evidence adduced in the trial in it tended to prove the following facts: The defendant, Grant Lumber Company, was a corporation organized under the laws of Arkansas, and engaged in a lumber and railroad business. On the third day of October, 1907, James M. Taylor, the intestate of plaintiff, was employed by it to serve in the capacity of mill foreman. He was not employed to aid in operating the railroad; he had nothing to do with that. John Lites was the manager of its business. On the third day of October, 1907, at night, he (Lites) received news that a mule of the company was sick at a logging camp at the end of the railroad about two or three miles distant from the mill. He ordered a train, consisting of a locomotive and two or three log cars, made ready to take him to the camp to see the mule. On the way to the train he passed the house of plaintiff's intestate. He asked Lites where he was going, and he replied that he was going out to the end of the railroad to "doctor" a sick mule. He (Taylor) then remarked to his wife, "Well, it is a company mule, and a company matter, and I am supposed to

go," and he went without invitation, order or direction, and was diligent in preparing for the trip; carried a lantern to the train, and a bottle to drench the mule. Volunteers were not lacking. Five or more, including Taylor, left on the train to assist others in doctoring one sick mule. It seems to have been a matter of pleasure. The train backed out with two or three log cars in front. It was suggested that some one ride on the front end and carry a lantern for the benefit of the engineer, and the deceased, James M. Taylor, volunteered, and took a lantern and went to the front end of the train, and sat down on a "bunk" on which logs were carried. This was an extremely dangerous place to ride. The train continued to move backwards until within a short distance of the camp, the place of destination, when it struck a log and the forward car was thrown from the track and Taylor from the car. One of his legs was crushed by the train from the knee down to the foot, from the effects of which he died in a short time. He was not injured in the course of his employment or in the discharge of any duty to the company, but while acting outside of the same and as a volunteer. The plaintiff was not entitled to recover anything. *Railroad Company* v. *Dial,* 58 Ark. 318.

In pursuance of the stipulation, final judgment is rendered here; and the action is dismissed.