COCA-COLA BOTTLING COMPANY OF ARKANSAS *v.* EUDY.

4-4069

Opinion delivered December 9, 1935.

*S. Hubert Mayes, Gustave Jones* and *J. Hugh Wharton,* for appellant.

*Fred M. Pickens* and *H. U. Williamson,* for appellee.

BAKER, J. Mrs. Ella Eudy sued the Coca-Cola Bottling Company of Arkansas in the circuit court of Jackson County. She alleged that on or about November 18, 1933, she purchased from a man named Taylor, who was running a restaurant in Newport, a bottle of Coca-Cola, manufactured and put up by the defendant; that she drank about two-thirds of the contents of the bottle at the time of the purchase and immediately became nauseated;

that upon an examination of the remaining portion of the contents of the bottle she discovered therein a spider. She was sick for several days, and had a physician who administered to her, and that she was not really well for a considerable time thereafter.

Upon a trial of the case, on February 5, 1935, there was a verdict by the jury for $600 and consequent judgment was rendered. From this verdict and judgment is this appeal.

Immediately after this trial, motion for a new trial was filed and overruled, and appeal was prayed and granted.

The only matters raised upon this first motion for a new trial were as to the sufficiency of the evidence offered in support of the complaint, which charged facts above stated, and in addition thereto that the contents of the bottle from which she drank was poisonous and in an unfit and unwholesome condition for human consumption. It was also charged in said motion that one of the attorneys representing the plaintiff had made improper and prejudicial remarks in the course of his argument. He had said in effect: "You have to be careful in weighing and considering the testimony in this case, because, when you go up against these powerful corporations, you have a hard fight." This remark was objected to at the time made. The jury was cautioned by the court and advised not to consider the remark; that it was improper and should not have been made. These are the only issues appearing in the record at that time. We think it is sufficient to say, without detailing the testimony adduced upon the trial, that a careful examination of this entire record to that point discloses no prejudicial error.

The foregoing statement must not be taken as an approval of the remark made by the attorney, but the remark did not express or allege any statement of fact which would, or might tend to, present the jury any new matter. As we understand the record, the attorney was merely seeking to give advice to the jury by way of caution, and the most that could be said about his remark is

that he was perhaps expressing an opinion that was in no wise warranted.

We think, however, the court properly instructed and advised the jury upon objections made by the appellant. We assume that the jury did not permit itself to be influenced, as the trial court promptly and correctly instructed them in regard to the remarks objected to by appellant. *Hogan* v. *State, ante* p. 437. Cases cited in above case are authoritative and followed by this court.

Later, however, on April 30th, the defendant, appellant here, filed a supplemental motion under the seventh subdivision of § 1311, Crawford & Moses' Digest, praying that a new trial be granted to it upon newly-discovered evidence. To this supplemental motion was attached an affidavit of Mrs. Moore. This affidavit is here copied, omitting only the formal parts thereof.

"On November 18, 1933, Mrs. Ella Eudy, who is now Mrs. Ella McAllister, was staying at my house on Plum Street in Newport, Arkansas. About three or four days prior to November 18, 1933, Mrs. Ella Eudy caught a spider in an old sweater at my house. I was working for Owen and Bowie at that time, and when I came in from work that day Mrs. Eudy had the spider in a glass of water and told me she was going to go to Paul Taylor's Restaurant and buy a Coca-Cola and put it in there and make like she was sick. On November 18, 1933, about 2:30 or 3:00 o'clock in the afternoon, I came home. Mrs. Eudy told me she was going to Paul Taylor's and get a bottle of Coca-Cola and drink part of it and then put the spider in it and make like she was sick. She asked me to go along with her. Alfred McAllister, Mrs. Eudy McAllister's husband, came in and heard her tell me about it. Mrs. Eudy McAllister took the spider out of the glass of water and put it in her handkerchief and took it with her. Before we left the house, Mrs. McAllister took a dip of snuff so, she said, when she swallowed the Coca-Cola she would get sick and vomit. She didn't dip snuff at all that I know of. We went to Paul Taylor's Restaurant, Mrs. McAllister and I, and each ordered a bottle of Coca-Cola. Paul Taylor, I think, waited on us. Paul left out soon

and he gave us the Coca-Colas. Buddy Mink and Henry Tracey were working there. Mrs. McAllister drank about half the Coca-Cola and slipped the bottle down in her lap and put the spider in it. She began to gag and spit and Buddy Mink came and picked up the bottle and looked at it and said there was nothing in it. Then Mrs. McAllister whispered to me that she 'dropped that damned spider.' She then took my bottle of Coca-Cola and put the spider in it, and while Buddy Mink was looking in her bottle, and when he set her bottle down, she switched bottles with me and called Buddy Mink and told him, 'There is something in there.' She then began to act like she was sick and tried to vomit. Henry Tracey said he would call a doctor, and she said to call Dr. Best. Henry Tracey and I took her in the back room of the restaurant and laid her down on a bed. Dr. Best brought her to my house and gave her some medicine, and she wouldn't or didn't take any medicine at all, and I threw the medicine away. Dr. Best came out to see her twice and she went to his office once. She had her doctor bill charged to me, and I paid for the medicine. Never was a dose of it taken. She never was sick, and thirty minutes after she was home from drinking the Coca-Cola she ate some bologna sausage and crackers. When any one would come to the house, she would run and jump into the bed and act like she was sick.

"There positively was nothing in the bottle but Coca-Cola when she bought it. She put the spider in it so she could sue the Coca-Cola Company for some money."

Upon presentation of this supplemental motion for a new trial, Mrs. Moore and other witnesses were sworn and testified. It is unnecessary to repeat in detail the testimony of all of the witnesses, particularly that of Mrs. Moore, whose testimony was substantially in accord with her affidavit.

Lawrence A. Goldman testified that he was employed by the Coca-Cola Bottling Company to investigate this case when the suit was filed. He went to Newport and first obtained permission from counsel for appellee to talk with his client, Mrs. Eudy. From her he learned that

Mrs. Moore was with Mrs. Eudy at the time Mrs. Eudy went to the restaurant and drank the Coca-Cola. Mrs. Eudy also advised him as to the location of the place where Mrs. Moore lived in Newport. He called at that place twice on that day and failed to find Mrs. Moore there. On two or three other occasions, later on, when he was in Newport, perhaps on other business, he attempted to find Mrs. Moore to interview her in regard to facts concerning this suit. He was never able to find her. He also testified that Mrs. Eudy informed him that Mrs. Moore would testify to substantially the same facts that Mrs. Eudy had stated to him. On account of these statements, he was led to believe that Mrs. Eudy would have Mrs. Moore present when the case came on for trial. It was not implied by this statement that Mrs. Eudy had attempted to deceive him in this matter, but it was merely a conclusion he had reached from her statements. This conclusion was justified when it is considered that the two women were friends and associated, going about together, and living together in the same house. It was also shown that, at the time the parties announced ready for trial, counsel for the appellant announced that he desired to have Mrs. Moore present for the trial of the case as his client had insisted that she be called as a witness for her, but that he had been unable to find Mrs. Moore as she had left Newport and gone to Hot Springs; that he had been so anxious to procure her attendance that he had had a long-distance telephone call for her with the telephone company for several days. At the time of the presentation of this motion Mr. Pickens, appellee's attorney, made substantially the same statement.

Without going more into detail as to the testimony, we think the facts were perhaps clearly stated by the trial judge after hearing the motion and all of the testimony in relation thereto.

"This, as I see it, is rather an unusual matter. This affidavit goes right to the merit of the lawsuit. While I think it is somewhat of a discretionary matter with the court, it is not really corroborative evidence. This party was living with the plaintiff at the time, and they went

to this place together, as their testimony shows, and this woman took the spider, already had it prepared, and took snuff in order to make herself sick in order that she might vomit, so this witness says here. It seems to me that both sides have been trying to get hold of this particular witness to see what she was going to say about it. I realize that very often after a case is tried that it is not a very difficult matter to discover some new evidence. However, this is a different proposition that the court is confronted with here. If the jury believe this statement, of course, they would—and that is for them to say—there would be a different result in the lawsuit. There is no question about that. I will say this, gentlemen, it would not take long to try it, but I would say that you have to pay all those costs in this last suit. I would think you ought to do that if it is tried.''

The foregoing is a substantial compliance with the law as the same is set forth in the seventh subdivision of § 1311, Crawford & Moses' Digest. We suggest that the trial court's announcement upon this hearing of his findings and conclusions warranted the relief prayed for in this supplemental motion.

On the matter of diligence, it would seem that both plaintiff and defendant were anxious to secure the attendance of this witness, and nothing that has been suggested to us that tends to show a dereliction of duty, except the fact that several months elapsed after the filing of this suit before it was tried, and that this time was apparently sufficiently long that one might have found or located the absent witness, but this conclusion is met with the undisputed proof that neither party was able to locate the witness during this interval, and we accord to both sides under their statements full credit, as the trial court did, that each was making an effort to do so. Therefore, it seems that the requirement of the exercise of diligence has been fully met.

Without attempting further argument, let it be said that we approve the statement of the trial court as to the materiality of this testimony.

The court had present all of the witnesses. He observed them, and this testimony must have been convincing to him. It was not cumulative. No one presented any such facts upon the trial.

Moreover, if this testimony is to be believed, it clearly indicates that the plaintiff had no cause of action at all. The trial court fully understood all of these matters and frankly and clearly stated the effect thereof, but he ruled adversely to what we think was practically the irresistible conclusion from his findings. No fact was announced that justified this ruling, not even the testimony that Mrs. Moore had been somewhat discredited by an officer's statement reflecting seriously upon her reputation in the community.

This court said in the case of *Blackwood* v. *Eads*, 98 Ark. 304, 135 S. W. 922: "The witnesses give their testimony under the eye and within the hearing of the trial judge. His opportunities for passing upon the weight of the evidence are far superior to those of this court. Therefore his judgment in ordering a new trial will not be interfered with unless his discretion has been manifestly abused."

The above quotation was cited with approval in the case of *Twist* v. *Mullinix*, 126 Ark. 427, 428, 190 S. W. 851. In the case of *Twist* v. *Mullinix*, however, the trial judge announced with reference to a motion for a new trial: "While the jury determined by their finding that the defendant, Twist, did not make a full and complete statement of all the facts within his knowledge when consulting said attorney, in my judgment the finding upon that question was against the preponderance of the evidence."

It is likewise true in the present case, as in the case of *Twist* v. *Mullinix*, the court announced the finding of fact contrary to and not supporting the ruling he made thereon, and, on account thereof, the judgment in the case of *Twist* v. *Mullinix* was reversed.

Under subdivision 6, § 3219, Crawford & Moses' Digest, there is a provision for the granting of a new trial to a defendant who has discovered important evidence in his favor since the verdict. Upon this paragraph or sub-

division, relating to criminal procedure, the ruling of this court has been substantially the same as under the provision relating to civil procedure. This is made clear by the opinion in the case of *McCullars* v. *State,* 183 Ark. 376, 382, 35 S. W. (2d) 1030.

In the McCullars case, *Twist* v. *Mullinix* is cited as authority, and also the case of *Mueller* v. *Coffman,* 132 Ark. 45, 200 S. W. 136. There the court, as in this case, expressed a view as to the value and effect of the testimony, expressing his surprise at the jury's verdict and otherwise indicating his conclusions of certain facts contrary to the decision announced in denying a motion for a new trial.

These are not all of the authorities, by any means, which might be gathered together in relation to this interesting subject, but certainly a sufficient number to illustrate the rule.

Let it be said in conclusion that the law is well settled and of long standing, and, we think, well exemplified in the cited cases, all of which were well presented and thoroughly considered. It is our duty to follow this well-defined rule of decisions. The trial court was not in the proper exercise of that vested discretion in overruling this supplemental motion for a new trial after he had reached conclusions announced. A determination of the facts by the trial court, as made and announced, justified only one result, that the appellant was entitled to a new trial.

Therefore the judgment is reversed, and the cause is remanded for a new trial.

Mr. Justice MEHAFFY dissents.