MISSOURI PACIFIC RAILROAD CO., L. W. BALDWIN, ET AL., TRUSTEES, *v.* BREWER.

4-4503

Opinion delivered March 8, 1937.

*R. E. Wiley* and *E. W. Moorhead,* for appellants.

*Tom W. Campbell* and *R. W. Wilson,* for appellee.

BUTLER, J. The appellee, George M. Brewer, brought s u i t against the defendants, Baldwin and others, to recover damages for personal injuries received by him at a crossing over the tracks of the Missouri Pacific Railroad Company at Woodson, Arkansas. The cause of action is based upon the alleged common-law negligence of the appellants in the operation of their train. The specific acts of negligence alleged were (1)

failure to exercise ordinary care in giving warning by the ringing of a bell or the sounding of a whistle at the approach of the train; (2) failure to exercise ordinary care on the part of the operatives of the train in keeping a lookout; and (3) the excessive rate of speed of the train as it approached the crossing. The answer specifically denied the allegations of the complaint and, as an affirmative defense, alleged the want of ordinary care by appellee for his own safety at the time he drove upon the railroad track in front of the approaching train.

On the issues joined, evidence was adduced and the case submitted to the jury on instructions which appear to be proper declarations of law. The jury returned a verdict in favor of the defendants. Subsequently a motion for a new trial was filed which was sustained by the court, the verdict set aside and a new trial ordered. From that judgment comes this appeal.

In support of the action of the trial court, the appellee calls attention to the well-settled principle that the trial court is the only tribunal vested with power to determine whether or not a verdict is against the preponderance of the evidence. The reason for this rule is also pointed out, which is that because of the training and experience of the trial judge in weighing testimony, and of the application of legal principles to the same, and of his equal opportunity with the jury to judge the credibility of witnesses, he may justly determine whether or not the jury by their verdict has failed to do justice under the testimony and instructions of the court. We recognize the soundness of this principle, and that no more important duty rests upon circuit judges than that involving the power to set aside the verdict of a jury when it appears to be contrary to the preponderance of the evidence, and this court should be careful not to discourage them in its exercise. Many cases have been before us in which it seemed to us apparent that the verdict was not supported by the weight of the evidence, and the fact was deplored that trial judges did not more frequently perform their plain duty by promptly setting aside the verdict and granting a new trial. While it is true that the

trial court has the power, and should exercise it, to set aside the verdict of a jury when it is contrary to the preponderance of the evidence, it is equally true that this is not an arbitrary power, but one of judicial discretion, and subject to review for its improvident use.

We think the case of *Blackwood* v. *Eads*, 98 Ark. 304, 135 S. W. 922, cited and relied upon by appellee, states the correct rule by which the action of a trial court, in passing upon a motion for a new trial, is to be determined, namely, that "where there is decided conflict in the evidence, this court will leave the question of determining the preponderance with the trial court, and will not disturb his ruling in either sustaining a motion for new trial or overruling same. 'The Supreme Court will much more reluctantly reverse the final judgment in a cause for error in granting than for error in refusing a new trial.' " Other cases are cited by appellee which in no wise impair the doctrine announced in the case, *supra*, but follow and approve it.

The trial court made certain findings on the motion for a new trial which were filed in the case. Reliance is placed on the final sentence contained in the findings of the court, which is as follows: "That no reflection is due upon any one, but as I view the evidence, and as I recall it, and as I viewed it then, there was a conviction on my part then, and is now, that the verdict of the jury was against the weight of the evidence, and for that reason, and that reason only, I am going to grant the motion for a new trial." This contention ignores and fails to notice the particular ground of negligence found by the trial judge to exist regarding which, in his opinion, the weight of the evidence was against the verdict. In the findings of the trial judge there was none to the effect that on the whole case the verdict of the jury was against the preponderance of the evidence or that the weight of the evidence sustained the allegation that the train was traveling at an excessive rate of speed. While the doctrine of discovered peril was not invoked by the allegations of the complaint, it was submitted to the jury by one of the instructions given by the court, and there was

no finding upon this issue that the preponderance of the evidence sustained liability on that ground. The grounds of negligence considered by the trial court as stated by him were, that "The two and only two material issues" were "the failure to keep a constant lookout, and the failure to sound the customary alarm." With respect to the latter issue, he said: "As I review and recall the evidence from this time back, the question of blowing or not blowing the whistle is highly disputed, and it would be difficult for any human to say which way the evidence preponderated. That leaves the question of keeping a constant lookout." It was, then, upon that issue, that the judge determined that a preponderance of the evidence tended to establish failure to keep a lookout. With reference to the evidence on that issue, the judge said: "On the part of the trainmen, the engineer readily admitted that he was keeping a lookout on the east side, and was in no position to see plaintiff. The fireman was putting coal in the firebox, and was in no position to see plaintiff. * * * As I recall the testimony of the brakeman, who was keeping a lookout, he said he saw the plaintiff for some time before he drove onto it. He did not say, however, that he communicated his information to the engineer who controlled the movement of the train. The physical facts, to the court's mind, evidence this situation: that the plaintiff did not see the train until it was too late for him to do anything he did not do for his own safety; that the engineer and other trainmen did not see the plaintiff's peril, except in the case of the negro brakeman, in time to have endeavored to have done anything until about the time of the impact. * * * The only ones who really could testify as to whether it (the lookout) was kept or not kept was the trainmen, and that, when it is sifted, brings it down to the testimony of the negro brakeman, as I view it, and the burden of proving the keeping of a lookout was on the defendant." It was this view of the evidence upon which was based the conclusion that a preponderance of the evidence established negligence in failing to keep a proper lookout.

As we view the evidence on this branch of the case, we perceive no decided conflict in it, but rather that it is undisputed. It shows that the railroad ran north and south through the town of Woodson. South of the town the highway ran parallel with the railway on the west side thereof, and about twenty steps, or sixty feet, away. When the town of Woodson is reached the highway approaching from the south turns abruptly to the right and crosses the railroad from west to east. It is undisputed that plaintiff was driving on the west side of the railway traveling in the same direction as the train. Just before the town of Woodson was reached the fireman was engaged in replenishing the furnace with coal and a brakeman took his place on the left, or west, side of the locomotive in order to keep a lookout from that side. The engineer was sitting at his place on the right, or east, side of the locomotive and both were keeping a constant lookout. The engineer's view was obscured so that he could not see travelers traveling on the highway parallel with the train, and did not see plaintiff's car on the highway or when it turned to make the crossing. The engine extended some sixty feet from the cab window, and obstructed the engineer's view of the highway parallel to the track, but he could see the crossing until he reached a point approximately 250 feet from it. He saw plaintiff's car reach the crossing at about the time an alarm was given by the brakeman. The fireman, from about half a mile south of Woodson to within three or four hundred feet of the crossing, was placing coal in the firebox. When he looked up he saw that the locomotive was about to strike a car which had its two front wheels over the west rail. This was the instant before the impact. The brakeman, who had taken the fireman's place, saw the car ahead of the train on the highway, and when the train was about 200 feet from the crossing the car rolled up on the track ahead and came to a stop. He then gave the alarm to the engineer. Certainly, no duty rested on the brakeman to warn of the presence of a traveler on the highway where he was in a place of safety or where he stopped his car, as he said he did, some 20 or 25 feet

from the crossing. As a general rule, those keeping a lookout may assume that a person, before starting across a track, will exercise due care for his own safety, and ordinarily no duty rests upon the railroad employees to give an alarm until it reasonably appears that such person is entering, or about to enter, a place of danger. *Missouri P. Rd. Co.* v. *Rogers,* 184 Ark. 725, 43 S. W. (2d) 757.

This being an action for common-law negligence on the alleged want of ordinary care in the operation of appellants' train, the comparative negligence statute applies. *Missouri P. Rd. Co.* v. *Rogers, supra,* and the case was submitted to the jury upon that theory. It may be said that even though there was a failure to use ordinary care in keeping a lookout, the evidence fully justifies the conclusion reached by the jury under the instruction of the trial court embodying the comparative negligence doctrine. The trial court recognized the applicability of this doctrine, for, in passing upon the motion for a new trial, the judge observed: ''The question of contributory negligence is a proper factor to consider. It is not disputed, as I recall it, that the plaintiff stopped, looked and listened other than that testimony is treated as disputed under the law because, as I recall it, only the plaintiff testified to that effect. The importance of that railroad crossing is familiar and well known to the trainmen, and for that matter, equally well known to him.'' Further than this mention, the negligence of plaintiff was ignored.

In the first place, the memory of the court as to the testimony relating to the plaintiff's stopping is as fault. The evidence *was* disputed. A witness, who appears to have been disinterested, testified that he was walking on the west side of the railway track, and entered the approach to the crossing, and while there the plaintiff turned into the approach to the crossing and, without stopping, drove directly on the track when his car stopped. Witness stated: ''I started up there to help him. The train was coming, and about the time I got up there the train hit him. I jumped back out of the way to keep from getting hurt myself.'' But if we eliminate the

testimony of this witness a state of facts is presented which might well have justified the court in holding as a matter of law that plaintiff was negligent, and that this negligence was the proximate cause of the injury he suffered. According to his testimony, as he entered the approach to the crossing traveling north, and at a distance of from 20 to 25 feet from the railway track he brought his car to a full stop, looked to the south, then to the north, saw or heard no train approaching, saw a car crossing from the east, and just as it crossed over, put his car in motion, reached a point on the railroad track, and was struck by a train coming from the south. While plaintiff testified he stopped his car in the approach to the crossing and looked and listened, it is significant that he failed to say he continued to observe this precaution after he started to drive upon the crossing. He failed in his duty in this. One must not only look and listen, but continue to do so until the point of danger has been passed. *St. Louis I. M. & S. Ry. Co.* v. *Johnson,* 74 Ark. 372, 86 S. W. 282; *Choctaw, O. & G. R. Co.* v. *Baskins,* 78 Ark. 355, 93 S. W. 757; *St. Louis I. M. & S. Ry. Co.* v. *Prince,* 101 Ark. 315, 142 S. W. 499.

The occupant of the car crossing from the east stated that as he crossed he saw the train approaching from the south. The evidence is undisputed that the view of the railroad in that direction was unobstructed, and that the train which struck the plaintiff consisted of a locomotive, tender and sixty-eight loaded freight cars.

The physical facts not only dispute plaintiff's testimony relating to the precaution he took before driving upon the crossing, but completely refute it. If he had used his sense of sight, or hearing, as he said he did, he was bound to have both heard and seen the approaching train. Certainly this is true if he had continued to look and listen during the time he was moving toward the crossing. The train was so near at hand that it reached the same point on the railway, and at the same time as did the plaintiff, and this while plaintiff was coming a distance of not more than 20 or 25 feet. The lowest estimate of the speed of the train was forty miles an hour,

and it could not have been but a short distance away when plaintiff put his car in motion to go upon the track. The headlight on the train was burning, and even if the whistle had not been sounded, notice of the approach of the train would have been apparent to any ordinary person. It is common knowledge that a freight train of the character of the one in question traveling at the rate of speed it was making creates a noise which, with but the slightest attention, can be heard for a considerable distance. It is inescapable, therefore, that plaintiff neither looked nor listened, but apparently concluded that as one car had crossed in safety, he could also, and was negligent. This conclusion is supported by the cases of *Jemell* v. *St. Louis, S. W. R. Co.*, 178 Ark. 578, 11 S. W. (2d) 449; *Railway Company* v. *Tippett*, 56 Ark. 457, 20 S. W. 161; *Choctaw, O. & G. R. Co.* v. *Baskins*, 78 Ark. 355, 93 S. W. 757; *Chicago, R. I. & P. Ry. Co.* v. *Batsel*, 100 Ark. 526, 140 S. W. 726; *Huff* v. *Missouri P. Rd. Co.*, 170 Ark. 665, 280 S. W. 648; *Gillenwater* v. *Baldwin*, 192 Ark. 447, 93 S. W. (2d) 658; *Kansas City S. Ry. Co.* v. *Briggs, ante*, p. 311, 99 S. W. (2d) 579.

Even though the trial court might not have been justified in declaring the plaintiff guilty as a matter of law of negligence equal to, or greater than, that of the operatives of the train, still, under the undisputed facts, as disclosed by the circumstances surrounding plaintiff at the time, the jury might well have found from a preponderance of the evidence that plaintiff was negligent to that degree which absolved the appellants from liability. The trial court ignored this phase of the case, and his action was "improvident," that is to say, "thoughtlessly exercised and without due consideration." *Blackwood* v. *Eads*, 98 Ark. 304, 135 S. W. 922.

The cases cited by appellee which have been examined by us, to-wit, *Taylor* v. *Grant Lbr. Co.*, 94 Ark. 566, 127 S. W. 962; *Twist* v. *Mullinix*, 126 Ark. 427, 190 S. W. 851; *Spadra Creek Coal Co.* v. *Callahan*, 129 Ark. 448, 196 S. W. 477; *Spadra Creek Coal Co.* v. *Harger*, 130 Ark. 374, 197 S. W. 705; *Mueller* v. *Coffman*, 132 Ark. 45, 200 S. W. 136; *Pettit* v. *Anderson*, 147 Ark. 468, 227 S. W.

772; *Bean* v. *Coffee,* 169 Ark. 1052, 227 S. W. 522, are not in conflict with the conclusion we have reached. We have also examined many other cases, and do not find any to impair the doctrine stated in *Blackwood* v. *Eads, supra.* The effect of the Mullinix case, *supra,* is that, where the trial judge expressly finds that the verdict is against the preponderance of the evidence, it is his duty to grant a new trial. The other cases cited above, with the exception of the Taylor case, merely follow and approve the holding in the Mullinix case, but this rule is grounded on the proposition that the conclusion reached by the trial court must not be improvident. Where there is a substantial conflict in the testimony this court will not interfere with the judgment of the trial court as to where lies the preponderance of the testimony. But, where there is no substantial conflict, and it appears there is no just ground for the conclusion reached, it is within the province of this court to reverse the action of the trial court.

From the views expressed it necessarily follows that the judgment of the court below granting a new trial must be, and is, reversed, and the cause is remanded with directions to enter a judgment in accordance with the verdict.

SMITH, HUMPHREYS and MEHAFFY, JJ., dissent.

SMITH, J. (dissenting). The majority recognize that the case of *Blackwood* v. *Eads,* 98 Ark. 304, 135 S. W. 922, correctly states the rule to be followed by this court in reviewing the action of the trial court in granting a new trial because the verdict of the jury appears to be contrary to the preponderance of the evidence. That case has been frequently reaffirmed, and we may all agree that it announces the settled practice to be followed by this court. In accordance with the principles which that case announced the majority say: "that the trial court is the only tribunal vested with power to determine whether or not a verdict is against the preponderance of the evidence." When the trial courts have performed their function of determining whether a verdict is or is not contrary to the preponderance of the evidence, that question

is concluded, unless it is made to appear that the discretion of the court in determining that question was improvidently exercised. But when may this discretion be said to have been improvidently exercised? The case above cited answers this question expressly and very definitely. We quote from that case: " 'Improvidently exercised,' as used above, means thoughtlessly exercised or without due consideration." The question presented to us on the appeal from the action of the trial court is not whether the trial judge has erroneously decided the question, but is whether he did so thoughtlessly and without due consideration.

We may not agree with the conclusion of the circuit judge; but we must not forget that it is he—and not ourselves—who has this function to perform. The trial court in this case prepared an elaborate written opinion, to which the majority refer. This opinion was not written on the "spur of the moment" nor "off the reel." This opinion was delivered at an adjourned term of the court, and recites and reflects the most serious consideration. It is now an usurpation of his function to say that through erroneous mental processes he reached a mistaken conclusion as to where the preponderance of the testimony lay. The fact remains, as the trial judge's opinion recites, that the conclusion was reached that the verdict was against the weight of the evidence. The discretion exercised by the court was not improvidently exercised, although it may have been erroneously exercised. But we do not reverse for the erroneous exercise of the discretion; we have that power only when the discretion has been improvidently exercised.

There was a sharp conflict on every question of fact in the case, and while it may be true that if the trial judge had correctly apprehended the testimony he would not have found that the verdict was contrary to the weight of the evidence; but he did make that finding, not improvidently, but after the maturest reflection, and if the case of *Blackwood* v. *Eads, supra*, is to be followed, the judgment should be affirmed.

Justices HUMPHREYS and MEHAFFY concur in the views here expressed.