J. A. BOWMAN et al v. J. W. GABEL et al

5-4373                          421 S. W. 2d 898

Opinion delivered December 18, 1967

*Lewis D. Jones* and *John E. Butt*, for appellants.

*David Burleson,* for appellees.

CARLETON HARRIS, Chief Justice. An automobile collision occurred in Fayetteville on September 9, 1965, about 6:30 P.M., in the intersection of Vandeventer Street, running north and south, and Adams Street, running east and west. There were no traffic controls or signs at the intersection. A 1962 Chevrolet sedan was being driven south on Vandeventer by James E. Gabel, and Diane Bowman was driving a 1965 Pontiac sedan east on Adams. The Chevrolet was owned by J. W. Gabel, father of the driver, and the Pontiac was owned by the operator and her father, J. A. Bowman. The Bowmans, appellants herein, instituted suit for damages to the Pontiac, and the Gabels, appellees herein, counterclaimed for damages to the Chevrolet, and for personal injuries. Each side contended that the other driver was guilty of negligence which was the proximate cause of the collision. On trial, specific interrogatories were given to the jury, and it returned its verdict, finding that Diane Bowman Bassett[1] was not guilty of any negligence, and that James Gabel was guilty of negligence which proximately caused the collision; a verdict was rendered for the Bowmans in the sum of $1,250.00. Approximately a week later, appellees filed a motion for new trial, and thereafter, the court entered its order finding that the verdict of the jury "is not sustained by a preponderance of the evidence, that the answer, 'No,' of the jury to special interrogatory No. 1 [which referred to whether there was any negligence on the part of Diane Bowman] was against the preponderance of the evidence in this cause; and that by reason thereof the Motion for New Trial herein should be sustained." The verdict of the jury, and the judgment of the court, in accordance therewith, were set aside, and a new trial was granted. From this judgment, ap-

---

[1] Miss Bowman was married to Mr. Bassett sometime subsequent to the automobile collision.

pellants bring this appeal. For reversal, it is urged that the court applied the wrong rule of law in measuring the adequacy of the jury's verdict, and that, at any rate, the court clearly abused its discretion in granting the new trial for the reason that the evidence clearly preponderated in favor of the appellants.

Appellants first argue that the trial judge invaded the province of the jury, which was charged with passing upon all fact questions, and that, there being substantial evidence to support the verdict, the court was in error in setting same aside. It is further contended that the preponderance of the evidence supports the finding by the jury. Of course, we will not disturb a judgment based upon a jury verdict if there is any substantial evidence to support it (unless the court erred in giving the law). But whether there was any substantial evidence, or even a preponderance of the evidence, is not the test where the court has already set aside a verdict, and that action is appealed to this court. The proper test is stated in the recent case of *Worth James Construction Company* v. *Fulk,* 241 Ark. 444, 409 S. W. 2d 320. There, we said:

"In seeking a reversal counsel for the appellant rely upon our familiar rule that a verdict supported by any substantial evidence will be upheld in this court. That rule does not apply to a case such as this one, where the trial court has set aside the verdict as being against the weight of the testimony. Here the issue, as we have said, is whether the trial judge abused his discretion."

Appellants say:

"In examining the multitude of decisions handed down by the Supreme Court over the years, it is clear that the Court has analyzed the factual situation and that whatever the language used in the particular decision, it has determined whether or not there was any

substantial evidence to support the jury verdict; and if there was any substantial evidence to support the jury verdict, it has left the verdict intact and reversed those trial judges who have tampered with those verdicts.''

Several cases are cited, but *none* relate to our reversing the trial court for setting aside a jury verdict. Our rule, enunciated in *James,* is more fully set out, and explained in a case decided in 1916, *Twist* v. *Mullinix,* 126 Ark. 427, 190 S. W. 851. There, after stating that the court had properly instructed the jury, and that there had been evidence to sustain the verdict of the jury, this court, in an opinion by Mr. Justice Wood, proceeded to discuss the question which is at issue in the present litigation, as follows:

''The rule setting forth the respective functions of the jury and the trial court and this court is well expressed in *Richardson* v. *State,* 47 Ark. 562, 567, where we said: 'But the weight of evidence and the credibility of witnesses are to be determined by the jury. It is the duty of the trial court to set aside a verdict which is clearly against the weight of the evidence. But when the case reaches us, the quesiton is no longer whether the evidence preponderates on one side or the other, or whether due credit has been given to the statements of a witness who has testified fully and fairly. But the question is, whether there is a failure of proof on a material point. To order a new trial because we differ in opinion from the circuit judge as to the weight of the testimony, or the truth or falsity of a witness, is to substitute our discretion for his discretion. And in this matter he is supposed to enjoy some advantages over us.'

''And again in *Blackwood* v. *Eads,* 98 Ark. 304-310, where we quoted from *Taylor* v. *Grant Lumber Co.,* 94 Ark. 566, as follows: 'The trial judge still has control of the verdict of the jury after and during the term it was rendered. Because of his training and experience in the weighing of testimony, and of the application of legal

rules to the same, and of his equal opportunities with the jury to weigh the evidence and judge of the credibility of witnesses, he is vested with the power to set aside their verdicts on account of errors committed by them, whereby they have failed in their verdict to do justice and enforce the right of the case under the testimony and instructions of the court. This is a necessary counterbalance to protect litigants against the failure of the administration of the law and justice on account of the inexperience of jurors.'

"In *Blackwood* v. *Eads, supra,* we said further: 'Where there is a decided conflict in the evidence this court will leave the question of determining the preponderance with the trial court, and will not disturb his ruling in either sustaining a motion for a new trial or overruling same. * * *

" 'The witnesses give their testimony under the eye and within the hearing of the trial judge. His opportunities for passing upon the weight of the evidence are far superior to those of this court. Therefore his judgment in ordering a new trial will not be interfered with unless his discretion has been manifestly abused.' * * *

"* * * We cannot approve the doctrine that it is an invasion of province of the jury for the trial court to set aside a verdict which he finds to be against the preponderance of the evidence. On the contrary if he fails to do so, he surrenders his own province, ignores his duty, and by so doing destroys the integrity of the best system that thus far has been devised in this country for the administration of justice. * * *

"* * * Having presided at the trial, and having seen and heard the witnesses testify, they have had the same opportunities as the jury, and hence are vested with the authority to ascertain whether or not the jury's verdict is in accordance with the preponderance of the evidence, and when they have found upon conflicting evidence that

such verdict is, or is not, against the weight of the evidence, such finding will not be set aside unless it is manifest that the court abused its discretion, that is, acted improvidently, arbitrarily, or capriciously in making such finding.''

The trial court, in setting aside the present judgment, apparently was greatly influenced by the fact that the jury found appellant, Diane Bowman (Bassett), not guilty of any negligence. This appellant testified that she stopped at the intersection before entering; that a hedge was located on her left, which somewhat obstructed the view, so she ''eased out a little bit and I still couldn't see, so I eased out a little bit more and I could see a car about half way down the block.'' She stated that she was about a foot from the middle of the intersection when she saw the automobile approaching. She continued, ''I was just creeping, so it would be just a mile or two an hour, something like that * * * I thought, do I have time enough to go across and I decided, no, so I put my hand on the gear shift to put it in reverse.'' She said that before she was able to do that, the car, which was traveling 30 or 35 miles an hour, hit her automobile. A young lady in the car with her agreed that she was traveling about ''one mile per hour,'' and this witness testified that the Gabel car was traveling 25 or 30 miles per hour. Gabel testified that as he approached the intersection, he looked to the left and found it clear, looked to the right, but there were shrubs that obstructed the view; however, he did not see any automobile; he then looked back to his left when entering the intersection, and he was hit by the Bowman vehicle. His sister, riding in the car with him, testified that appellant was driving at a ''pretty rapid'' speed. Photographs taken of the two vehicles reflect that the front end of the Pontiac (Bowman car) was pretty well smashed, and the right hand side of the Chevrolet (Gabel car) was crushed from a point just behind the right head light, the damage extending almost through the back door. A photograph of the front of the Chevrolet

reveals no damage to that portion of appellee's car. This evidence indicates that Mrs. Bassett was mistaken when she said that the Gabel car struck her; rather, it would appear that her automobile did the striking. Of course, even though this be true, the mere fact that one car struck another does not necessarily mean that the driver of the first vehicle was guilty of negligence which was the proximate cause of the collision. It is however a circumstance to be considered. Likewise, the court may have found it difficult to believe that the Gabel car traveled half a block at the speed mentioned by Mrs. Bassett and the witness on her behalf, while appellant's car was traveling only a few feet. Also, he may have considered that she was negligent in attempting to back up, rather than to proceed across the street. Still again, he simply may not have believed appellant's evidence about her speed, which was not uncontradicted. In fact, the Gabel girl testified that Mrs. Bassett was driving at a "pretty rapid speed."

At any rate, as pointed out in *Twist*:

"'The witnesses give their testimony under the eye and within the hearing of the trial judge. His opportunities for passing upon the weight of the evidence are far superior to those of this court. Therefore his judgment in ordering a new trial will not be interfered with unless his discretion has been manifestly abused.'"

In fact, this abuse of discretion is likewise characterized in the same opinion (as heretofore quoted) as acting improvidently, arbitrarily or capriciously. Among other definitions, one's actions are said to be arbitrary if they are unreasonable, determined by no principle, or based upon random or convenient selection or choice, rather than on reason. The word capricious, *inter alia,* means irresponsible and impulsive, or refers to acts committed according to whim or passing fancy. Certainly, we cannot find that the action of the trial

court came within any of these definitions, and it is just as certain that it is not manifest that the court acted arbitrarily in setting aside the verdict.

Affirmed.