YARNELL ICE CREAM CO., INC. *v.*
J. A. WILLIAMSON, ET UX

5-4399                                                 428 S. W. 2d 86

Opinion delivered May 21, 1968

*Barrett, Wheatley, Smith & Deacon,* for appellant.

*Pickens, Pickens & Boyce,* for appellees.

CARLETON HARRIS, Chief Justice. This is an appeal

from an order of the Jackson County Circuit Court, setting aside a judgment in favor of Yarnell Ice Cream Company, appellant herein, and granting a new trial. J. A. Williamson and Mary Frances Williamson, appellees herein, instituted suit against appellant, alleging severe personal injuries to Mrs. Williamson and property damage loss to Mr. Williamson, as the result of a collision which occurred in the city of Newport on April 4, 1963. On that date, Mary Frances Williamson was a passenger in the automobile owned by her husband, J. A. Williamson, and driven by appellees' daughter, Sharon Pugh. The Williamson vehicle stopped for a red traffic light at the intersection of Malcolm and Pecan Streets, and was struck from the rear by appellant's truck, which was being driven by an employee, Robert Davis. According to the evidence, the Williamson car was knocked 119 feet, and the truck, which continued on after the collision, came to rest 180 feet west of the intersection. The defense offered by appellant at the trial was that the brakes on the truck had failed, and Davis was accordingly unable to stop the vehicle. Mr. Davis, 25 years of age, and employed by appellant for seven years, testified that he had had no trouble at all with the brakes until just before the accident; that he had just gone through a green light, and as he approached the Williamson car, pressure was applied to the brakes, and they "collapsed." The witness testified that he then pulled the emergency brake, and shifted the truck into third gear, but by that time, he had struck the rear of the Williamson automobile. The truck was carrying a load of 170 fifty-pound boxes of sweet cream. Davis testified that he endeavored to have the truck repaired before leaving Newport, and that he observed the cause of the failure of the brakes:[1]

"Well, the brake line had rubbed on part of the truck on the under part and it had rubbed so thin that when I applied the brakes it burst the hose and all the fluid run out."

---

[1]Appellant did not offer the brake line into evidence.

The driver testified that traffic was approaching from the opposite direction (though this was disputed by appellees' witnesses), and when asked why he did not turn to the right and drive his car up over a curb where a service station was located, replied, "Sir, after the brakes went out, I was busy trying to stop it."

Gerald Holbrook, a barber, who operates a shop at the intersection of Malcolm and Pecan, heard the crash, and then looked around to observe what was happening; he testified that Davis appeared to be having difficulty getting the truck under control: "He was racing the gears, you know, like he was trying to get it in gear and it was bucking and jumping trying to slow down, you know, to get it stopped." He said that the driver subsequently told him that "his brakes went out."

Mr. J. T. Rocka of Searcy testified that he worked on this truck on December 12, 1962, and had fixed the brakes on that occasion. He added that the truck was kept in excellent condition at all times. The witness said that it is possible for the hydraulic brake system on a truck to become ineffective because of a ruptured brake line without any prior warning of any defect, and that this is particularly true of a loaded truck.

Mr. James Turner of Kensett, also a mechanic, agreed with Mr. Rocka.

The jury returned a verdict for appellant, and when appellees filed a motion asserting that the verdict was against the preponderance of the evidence, the court set aside the jury verdict and granted a new trial. Appellant argues that in returning a verdict for the ice cream company, the jury unanimously agreed that Davis did not commit any act of negligence which caused or contributed to the collision. The company relies upon testimony of Davis, Holbrook, Rocka, and Turner, and also points out that the two investigating officers testified that Davis told them, after the accident, that his brakes had

failed as he approached the stop light. Pat Babb, one of the officers, also testified, ''In checking the truck, I found out that it had no brakes.''

It is asserted that the trial judge granted the motion because he misconstrued the case of *Houston* v. *Adams,* 239 Ark. 346, 389 S. W. 2d 872, and felt that that case compelled a setting aside of the verdict.

. We find no error. In numerous cases we have said that, where a judgment is set aside, the sole issue is whether the trial judge abused his discretion. In *Bowman* v. *Gabel,* 243 Ark. 728, 421 S. W. 2d 898, quoting *Twist* v. *Mullinix,* 126 Ark. 427, 190 S. W. 851 (this case quoting from *Blackwood* v. *Eads,* 98 Ark. 304, 135 S. W. 922), we said:

'' ' ''The witnesses give their testimony under the eye and within the hearing of the trial judge. His opportunities for passing upon the weight of the evidence are far superior to those of this court. Therefore his judgment in ordering a new trial will not be interfered with unless his discretion has been manifestly abused. '' * * *,

'' ' * * *Having presided at the trial, and having seen and heard the witnesses testify, they have had the same opportunities as the jury, and hence are vested with the authority to ascertain whether or not the jury's verdict is in accordance with the preponderance of the evidence, and when they have found upon conflicting evidence that such verdict is, or is not, against the weight of the evidence, such finding will not be set aside unless it is manifest that the court abused its discretion, that is, acted improvidently, arbitrarily, or capriciously in making such finding.' ''

Certainly, we cannot say that it is here evident that the court ''manifestly abused'' its discretion. At the outset, let it be stated that there is no allegation of any

negligence on the part of the driver of the Williamson vehicle. The driver of this car, observing the law, had stopped at a red light, and was simply waiting for the light to change when struck by appellant's truck. According to the evidence of Davis, the truck driver, he had been traveling approximately 20 to 25 miles per hour prior to striking the Williamson car. Under the undisputed evidence, this estimate of speed seems somewhat conservative, since the testimony reflected that the Williamson automobile (though stopped) was knocked 119 feet—over a third of the length of a football field.[2] Not only that, but the truck, although Davis, according to his statement, was frantically pulling on the emergency brake, and shifting gears in the truck to try and stop it, traveled approximately 180 feet before being brought to a standstill. Mr. Babb testified that the "whole rear end" was torn out of the automobile. Certainly, a much greater speed is indicated than that testified to by appellant's driver. There is also evidence that Davis could possibly have avoided this crash by turning his vehicle to the right, though it does appear that he might have struck a telephone pole had this been done.[3]

Appellant states that the trial court interpreted our decision in *Houston* v. *Adams, supra,* to require every motor vehicle to be equipped with two separate braking systems, each independent of the other, and each capable of stopping the vehicle in substantially the same distance,[4] and appellant states that this is an erroneous

---

[2] During the trial, appellant endeavored to show through cross-examination that the automobile was not "knocked" 119 feet, but rather, was "pushed" 119 feet; however, the witnesses who were interrogated as to this point were unable to give a definite answer. The only positive testimony was that the car was knocked for that distance.

[3] Of course, Mrs. Williamson and her daughter both testified that, while they were stopped at the light, there was no traffic meeting them.

[4] This interpretation does not appear in either the order signed by the court, nor in its memorandum opinion, in which the court, in finding that the verdict was clearly against the preponderance of the evidence, merely cited *Houston* v. *Adams.*

interpretation. It is argued that Ark. Stat. Ann. § 75-724 (Supp. 1967) only requires that the hand brake be capable of stopping and holding the vehicle. The statute reads as follows:

"75-724. Brakes.—(A) Brake equipment required.

(1) Every motor vehicle, other than a motorcycle or motor-driven cycle, when operated upon a highway shall be equipped with brakes adequate to control the movement of and to stop and hold such vehicle, including two [2] separate means of applying the brakes, each of which means shall be effective to apply the brakes to at least two [2] wheels. If these two [2] separate means of applying the brakes are connected in any way, they shall be so constructed that failure of any one part of the operating mechanism shall not leave the motor vehicle without brakes on at least two [2] wheels."

We agree that the statute does not require two separate braking systems, each capable of stopping the vehicle in substantially the same distance, nor did *Houston v. Adams, supra,* so hold. We did, however, in that case, hold that the hand brake must have stopping power, and the statute so requires. In the present case, there were circumstances (herein pointed out) that the trial court could have found clearly indicated the truck was being operated at a much greater speed than stated by appellant's driver, or the hand brake had practically no stopping power.

We find no abuse of discretion by the court in setting aside the verdict.

Affirmed.