St. Louis-San Francisco Railway Company *v.* Williams.

Opinion delivered November 18, 1929.

*E. T. Miller, E. L. Westbrooke, Jr.,* and *E. L. West-brooke,* for appellant.

Smith, J. Appellee recovered a judgment against the appellant railway company to compensate a personal injury sustained by her. The circumstances of the injury were as follows: She was walking between the main line, and a sidetrack at a point where there is a sharp curve. No road or street crossed the tracks near the place of her injury. The main line track was the outer one, and there were seven or more cars on the curve of the sidetrack, which ran parallel with the main line track, and at the usual distance from it. A person could have stood in the space intervening between the cars on the sidetrack and a passing train on the main line track without being struck by the train. Appellee was walking around the curve when a train approached from behind her, without ringing the bell or blowing the whistle, according to the testimony offered in her behalf, and, before she was

aware of the approach of the train, it passed her, and in doing so threw her violently to the ground and inflicted a painful injury.

It is apparent from the facts stated that appellee was a trespasser at the time of her injury, and, under the principles of the common law, the railroad company was under no duty to anticipate her presence and give her warning of the approach of the train by ringing the bell or blowing the whistle; nor was there any duty to maintain a lookout to discover her presence. The only duty owing to her, as a trespasser under the common law, was to exercise ordinary care under the circumstances to avoid injuring her after discovering her presence on the track and consequent peril. But, by an act of the General Assembly approved May 26, 1911, which appears as § 8568, C. & M. Digest, it is made the duty of all persons running trains in this State to keep a constant lookout for persons and property upon the track, and it is therein provided that, if any person or property shall be killed or injured by the failure to keep such lookout, the railroad company operating the train is made liable and responsible for all damages resulting from such neglect, notwithstanding the contributory negligence of the person injured, where, if such lookout had been kept, the person charged with the duty of keeping it could have discovered the peril of the person injured in time to have prevented the injury, by the exercise of reasonable care after the discovery of such peril, and the burden is imposed upon the railroad to establish the fact that the duty to keep such lookout had been performed.

This statute has been construed and applied in numerous cases arising under it, and no useful purpose would be served by reviewing them. In one of the latest of these—that of *Kelly* v. *DeQueen & Eastern R. R. Co.,* 174 Ark. 1000, 298 S. W. 347—we said: "We do not think the railroad company is liable for hitting a trespasser on the track, unless the plaintiff shows that the injury might have been avoided if a proper lookout had

been kept," by which was meant, as is made plain by other portions of the opinion from which we have just quoted, that it must be shown by the person asserting liability that the injury complained of was inflicted at such a place and under such circumstances that the presence of the injured party or property would have been discovered had the lookout required by the statute been kept. Upon such a showing being made, the burden then shifts to the railroad company to show that the duty to keep a lookout had been performed, and, to escape liability for the injury complained of, the railroad company must also show that the injury was unavoidable by the exercise of ordinary care. Numerous cases have defined the measure of this duty under particular facts.

The engineer testified that he was keeping a lookout, but, on account of the curve in the tracks and the presence of the box-cars on the sidetrack, he did not, and could not, see appellee until he was within about forty feet of her, and that the train was running at a speed of only twelve or fifteen miles per hour, as it had entered the limits of the city of Blytheville, and that he immediately applied the emergency brake, and the front of the train, which was a motor-car, rolled up to appellee without striking her, but, before the train could be stopped, some portion of it, probably a ladder running up the side of the car, struck her, and the train stopped within fifty feet after striking her. There is no contradiction of this testimony in that of any of the numerous witnesses who testified in the case, or in any fact or circumstance deducible therefrom appearing in the evidence.

As there was no fact or circumstance in evidence substantially contradicting the testimony of the engineer, it was an arbitrary act on the part of the jury to disregard his testimony. *St. L. S. F. R. Co.* v. *Harmon,* 179 Ark. 248, 15 S. W. (2d) 310. If the engineer's testimony is accepted as true, as it should have been in the absence of any contradiction thereof, or if his testimony did not appear of itself to be so unreasonable or improbable as

not to be worthy of belief, then there was no negligence on his part, and consequently no liability on the part of the railroad company can be predicated under § 8568, C. & M. Digest, *supra*.

Nor can any liability be predicated upon § 8575, C. & M. Digest, which provides that, in suits against railroads for personal injury or death, contributory negligence shall not prevent a recovery where the negligence of the person killed or injured is of less degree than that of the employees of the railroad company causing the damage complained of; it being provided in such case that the amount of the recovery shall be diminished in proportion to such contributory negligence. This is true because, as was said in the case of *St. L. S. F. R. Co.* v. *McClinton,* 178 Ark. 73, 9 S. W. (2d) 1060, "the undisputed testimony is such that it must necessarily appear that appellee's negligence was greater than that of the operatives of the train, and, this being true, a recovery is not authorized by § 8575, C. & M. Digest."

A verdict should therefore have been directed in favor of appellant, and the judgment in appellee's favor must be reversed, and, as the case appears to have been fully developed, it will be dismissed.