East Texas Motor Freight Lines, Inc. *v.* Dennis,
Administratrix.

4-8614                                    215 S. W. 2d 145

Opinion delivered November 8, 1948.

Rehearing denied December 20, 1948.

*Leland F. Leatherman* and *Buzbee, Harrison &
Wright,* for appellant.

*McMath & Schoenfeld, Earl J. Lane* and *Shaver,
Stewart & Jones,* for appellee.

GRIFFIN SMITH, Chief Justice.   Mary Ruth Dennis, who sued as administratrix, was the wife of Fred G. Dennis.   He was killed when two trucks collided.   A $16,000 recovery is to compensate the widow and two minor children.

It was alleged that a truck owned by East Texas Motor Freight Lines (at the time of collision driven by W. L. Johnson) negligently struck a tank truck driven by Dennis.   Recovery of $3,600 by H. G. Elliott was based upon a partnership and ownership of the butane truck, the interest in which through appropriate proceedings vested in Elliott.

Near midnight February 13, 1947, Johnson was driving south on Highway 67 near Hope when he observed the 'bobbing' motion of a motor vehicle approaching downgrade, headed north.   Johnson testified that when the light was first seen he was proceeding at a moderate rate of speed, "thirty, or maybe thirty-five miles an hour."   But, insisted Johnson, when the trucks met he had slowed "on this hill, and was making twelve to fifteen miles, having shifted to third gear."

Because of what appeared to be erratic movements of the approaching light as the truck came rapidly downgrade with the motor "wide open" and the vehicle "weaving from one side to the other," Johnson says he undertook to "angle" to the highway shoulder on his right side, and had partially succeeded when the butane truck "ducked in" with a sideswiping motion.   The result wrecked the butane truck, damaged Johnson's tractor and trailer, and caused the death of Dennis when his tankload of gas ignited.

The butane truck, according to Johnson, was built in such manner that it projected beyond the fenders, a structural characteristic spoken of as "an overdraft."   This protrusion, Johnson testified, was approximately eight inches—that is, eight inches beyond the fender width.   The extension corresponds with the distance Johnson thought Dennis had invaded beyond the highway median line.   There were no damage marks on the left front bumper or left front fender of the butane

truck. The witness undertook to explain this by saying that when he realized a collision was inevitable he cut to the right, thus throwing the front of his truck away from Dennis; and either a corner of the butane truck body, or its dual wheels, struck his dual wheels. This tended to "slap" Johnson's truck sideways. He admitted, however, that the front end of "this truck" (presumptively the one driven by Dennis) did not have dual wheels. Only the rear axles were so equipped.

There was testimony that the collision impact left marks on the butane truck back of the hood and virtually in a line with the driver's seat. Elliott, co-owner of the butane truck, and one of the plaintiffs, was asked if "this skirt on each side of the body here is flush with the front fender?" His reply was that it protruded one inch beyond the fender. This was at variance with Johnson's testimony, he having stated that the "overdraft" was eight inches.

Appellants rely largely upon distance measurements, photographs, a sketch, and skidmarks thought by the witness Mosier to have been made by the butane truck when it went approximately eight inches across the highway center. Mosier is a member of the State Police Force, with headquarters at Hope. He reached the scene about five minutes after the collision occurred, and in compliance with official requirements, prepared a report. This was used as a basis for his testimony when he was asked the following question:

"From your observation and your experience, what was your conclusion as to where the point of impact between the two vehicles was, with reference to the center of the highway?" Without objection on the ground that the answer called for a conclusion, Mosier replied, "I would say it was on the west side."

Other witnesses, all of whom made their observations substantially after Mosier had acted, testified they could not, with absolute certainty, say whether designated skid marks were imprinted before or after the trucks collided.

One witness found splinters "along about the black center line," but he couldn't say they were "more on one side than another." However, the debris was apparently from the body of the East Texas truck.

T. G. Anderson, of the Hope Police Force, testified regarding highway marks made by the trucks, and said, "All of the skid marks of the butane truck that I found were on the east side of the black line, until it reached a point opposite where it turned over."

J. H. Porterfield, State Police Officer, testified that he found "dual" truck tracks over the black center line, apparently made by the vehicle traveling south—inferentially the East Texas truck. He could not, however, determine whether the marks were made before or after impact occurred.

Porterfield's attention (and the attention of other witnesses) was called to a blackboard upon which the highway was illustrated, and from this, and from photographs pointed to, certain things and positions were indicated. The jury had the benefit of this direct evidence with the emphasis upon place and objects. The following appears in the examination of Porterfield:

"Now, would you take a piece of chalk and place marks on *there* adjacent to the black center strip so that the jury may understand just what you saw and understand the condition which you have just described?" Answer, "Yes." The reporter's notation is: "Witness makes a drawing on blackboard, then continues." The answer was: "These two dual wheel tracks showed a slight sign of rubber *there* just before they got on *this* side to follow the center line. That extended across *there,* and as it came across it got very plain: it made a blacker mark on the pavement than the black line. Over *here* was just a little rubber stain, and over *here* this tire on the black line showed to be pushed out to *this* point right *here.* The glass was along *here.*" The reporter then added: "The witness in his answer was illustrating from a blackboard drawing." The witness further said that "the truck that made *those* marks was traveling south, toward Hope, because *they* stopped to a

dead end—both tracks were in line. They had stopped about eight inches over the black line: in other words, a little more than the width of the tire." And finally: "Then did the vehicle that made those tracks you have described to the jury go over the center strip to the east side of the highway?" Answer, "They did, yes."

A statement the jury might have thought significant in connection with other evidence was Mosier's belief that the tracks or marks found eight inches over the highway center on Johnson's side were made by dual tires. The point is immediately opposite where Johnson thought the wreck impact occurred. Since only the rear axles of the butane truck were equipped with dual wheels, the factfinders could have believed that the marks were not made by the butane truck at the time and in the manner testified to by Johnson.

From the record of Porterfield's testimony we may draw conclusions; but certainly the jury could understand better, from the illustrations it is indicated the witness gave, than can we who as judges are asked to say the verdicts were not supported by substantial evidence. There are other references to charts, with emphasis on "here," and "there," and "over yonder," from which the jurors no doubt measured in their own minds what may to them have appeared to be inconsistencies, impossibilities, or inaccuracies. See *Smith* v. *Magnet Cove Barium Corporation,* 212 Ark. 491, 206 S. W. 2d 442.

Johnson's testimony need not be treated as uncontradicted. He was a co-defendant, vitally interested in the result. The jury, however, must not capriciously disregard a defendant's testimony merely because *that* status is shown. *St. Louis-S. F. R. Co.* v. *Williams,* 180 Ark. 413, 21 S. W. 2d 611; *Missouri Pacific Railroad Company et al.* v. *Ross, Adm'r.,* 194 Ark. 877, 109 S. W. 2d 1246, and other cases with similar holdings.

Consonant with views expressed by many reviewing courts, we have often said that physical facts may be more persuasive in determining the direction and effect of force, and in matters of timing and distance, than are

statements by eye witnesses. So, in the case before us, it cannot be said there was no substantial evidence in support of the plaintiffs' contention that the East Texas driver negligently caused the injury and damage, within legal contemplation. It is not argued that the instructions were erroneous, or that the judgments are excessive.

Affirmed.