PETERSON *v.* BROWN.

4-9089                              227 S. W. 2d 142

Opinion delivered February 20, 1950.

*William K. Harris* and *Daily & Woods,* for appellant.

*Lawson Cloninger* and *Myles Friedman,* for appellee.

HOLT, J. Appellee, a food broker, resided in New Iberia, La. Appellant, a resident of Ft. Smith, was, prior to September, 1945, operating a canning plant in Sallisaw, Okla., processing and packing, in tin cans, mustard and turnip greens.

July 9, 1945, appellee purchased, through appellant's broker, 1,000 cases of mustard greens and 500 cases of turnip greens. Shipment was made from Sallisaw on July 9th and delivery was made not later than July 16th, 1945, to appellee at New Iberia. A part of the shipment was stored in a warehouse in New Iberia and the remainder in a warehouse in Alexandria. Appellee sold to customers from these warehouses the above canned goods, over a period of approximately two years, or until the stock, of these canned goods at New Iberia, had been reduced to 225 cases, and that at Alexandria to 45 cases.

Appellee brought the present action September 4, 1948, more than three years from the date of sale, or delivery. He alleged in his complaint, in effect, breach on the part of appellant of an implied warranty that the goods were merchantable, fit for resale, and for human consumption; that the 225 cases in New Iberia were seized August 20, 1947, condemned and destroyed under the provisions of the Federal Pure Food and Drugs Act (21 U. S. C. A. 342 (a) (3)) and the 45 cases at Alexandria were likewise seized on February 25, 1948, and later destroyed. He sought to recover $714.12 in damages.

Appellant's answer was a general denial and affirmatively pleaded the three year Statute of Limitations as a complete bar to the suit. A jury trial resulted in a verdict for appellee for $704.29, and from the judgment is this appeal.

For reversal, appellant strongly contends that appellee's cause of action was barred by the three year Statute of Limitations, and that the court erred in refusing his request to so instruct the jury.

We have reached the conclusion that this contention must be sustained.

The sale in question was made July 9, 1945, and delivery made not later than July 16, 1945. The present suit was filed September 4, 1948, more than three years and one month from the date of sale, or delivery. The contract of sale was oral and the three year Statute of Limitations applies (Ark. Stats., 1947, § 37-206). The primary and decisive question here is: When did this statute begin to run, or from what date must it be computed?

In this case, there was no allegation of fraud or any proof thereof, and we have been unable to find any evidence in the record that would toll the statute, or that would establish a new date, subsequent to July, 1945, from which the statutory period should be computed.

The general rule, subject to exceptions, which we do not find present here, appears to be that any breach of warranty of soundness, kind or quality is broken when made and the statute of limitations begins to run from the date of the sale. In 37 C. J. 836, the rule is stated as follows: "Where unsound personal property is sold with a warranty of soundness, the warranty is broken as soon as made and the statute begins to run from the date of the sale, not from the time when the buyer sustains consequential damage. Likewise where goods are warranted to be of a certain kind or quality, but are not of that kind or quality, the warranty is broken when made and the statutory period is computed from the date of the sale, not at the time when special or consequential

damage results, or from the date when the breach is discovered; and this, although meanwhile the buyer is wholly unable to ascertain whether the goods comply with the warranty.''

Appellee concedes that the above is the general rule and says that the court ''has stated in previous decisions that the Statute of Limitations ordinarily commences to run when the cause of action accrues, and that a plaintiff's ignorance that a cause of action exists will not prevent it from running,'' but that the present case falls within exceptions to the general rule, and further says: ''This court has not passed upon the question directly, but decisions made by this court indicate that it would hold that the Statute of Limitations would begin to run only when a latent defect in personal property is discovered, or reasonably should have been discovered.''

He then cites and relies strongly upon *Louisville Silo & Tank Co* v. *Thweatt,* 174 Ark. 437, 295 S. W. 710, and the case of *P. H. Sheehy Co.* v. *Eastern Importing & Mfg. Co.,* 44 App. D. C. 107 (L. R. A. 1916F, 810), to which reference was made in the Thweatt case. Our construction, however, of our holding in the Thweatt case tends strongly to support the above general rule, and appellant's contention.

In that case, there was involved the sale of a steel granary to be used in storing rice, and we held, on one of the actions therein, that the Statute of Limitations was tolled by the seller's promise to make repairs and that the statute therefore began to run from the date following the last effort to make repairs. In the present case, as pointed out above, there is no proof of anything that would toll the statute.

In the Thweatt case, this court said: ''Ordinarily a cause of action for breach of warranty in the sale of personal property accrues upon the delivery of the property, the warranty being broken when made, and the statute of limitations runs from the date of delivery. This is true because the commencement of the limitation is contemporaneous with the origin of the cause of action.''

There we recognized and announced the general rule, and a minority rule.

The Sheehy Co. case (a canned goods case) was referred to only as supporting the minority view.

We also recognized and affirmed the rule that, in the absence of fraud, contract, (or evidence sufficient to toll the statute), an action for breach of implied warranty of fitness of personal property accrues from the date of sale, and delivery, the warranty being broken when made and the limitations statute runs from that date. In the Thweatt case, there was evidence from which it was held the statute had been tolled and it was there said: "We hold therefore that, while the statute of limitations ordinarily begins to run against an action for breach of warranty upon the sale and delivery of a chattel which does not comply with the warranty, yet the statute is tolled so long as the vendor insists that the defect can be repaired and is attempting to do so."

In the comparatively recent case of *Liberty Mut. Ins. Co.* v. *Sheila-Lynn, Inc.*, 185 Misc. 689, 57 N. Y. S. 2d 707, the Supreme Court of New York said: "The traditional doctrine is that a cause of action for breach of warranty of quality and fitness normally accrues at the time of the sale, notwithstanding the fact that the purchaser may not then be aware of the existence of any cause of action. Williston on Sales, § 212-a. 'Inability to ascertain the quality or condition of property warranted to be, at the time of the sale, a particular quality or in a certain condition, has never been allowed to change the rule as to the time when a right of action for a breach of the warranty occurs.' "

In the case of *Krueger* v. *V. P. Christianson Silo Co.*, 206 Wis. 460, 240 N. W. 145, which involved an agreement and effort to repair, similar in effect to the situation in the Thweatt case, above, the Supreme Court of Wisconsin, held, in effect, as this court held in the Thweatt case, that the limitation on an action for a breach of warranty should be computed from the date the silo was completed, but that subsequent promise and efforts to repair tolled

the statute as in the Thweatt case. It was there said: "A cause of action on contract, whether for damages or otherwise, commences to run from the time of the breach, whether the facts are known to the party having the right or not and if the latter, whether through ignorance, neglect or mistake of such party or fraud of his adversary. There is no exception. (Citing cases.) . . .

"Ignorance of his rights on the part of the person against whom the statute has begun to run, will not suspend its operation. He may discover his injury too late to take advantage of the appropriate remedy. Such is one of the occasional hardships necessarily incident to a law arbitrarily making legal remedies contingent on mere lapse of time."

In the case of *I. Kennard & Sons Carpet Company* v. *Dornan,* 64 Mo. App. 17, where there was involved a warranty of a happening of something in the future, or an act that would toll the statute, that court announced the general rule in this language: "The general rule unquestionably is that in all personal actions for the violation of an express or implied contract the statute begins to run from the date of the wrong, and not from the date of the damages caused by it. The wrong and not the damage constitutes the cause of action. Such has been the rule since an early day (*Sheriff of Norwich* v. *Bradshaw,* 1 Croke Eliz. 53), and that distinction is emphasized in the leading case of *Wilcox* v. *Plummer,* 4 Pet. 177, 7 L. Ed. 821."

In the Wilcox case, the U. S. Supreme Court held that the statute (of limitations) runs "from the time of the injury, that being the cause of action, and not from the time of damage or discovery of the injury."

We hold, therefore, as indicated, that the three year Statute of Limitations, in the circumstances here, began to run from the date of sale and delivery of the goods in question, and since appellee's action was not begun until more than three years following the sale and delivery, it was barred.

Appellee earnestly argues that appellant failed to file his motion for a new trial within the time required by our statute (Ark. Stats., 1947, § 27-1904), which provides: "The application for a new trial, . . . shall be made within fifteen (15) days after the verdict or decision was rendered, unless unavoidably delayed; provided . . ."

Appellee says that "under the statute it was mandatory upon the appellant to file his motion for a new trial within the time fixed in said statute (15 days) unless unavoidably delayed, that the trial court arbitrarily and erroneously extended the time for the filing of said motion." He therefore contends that the motion for a new trial and bill of exceptions should be stricken from the record and the judgment affirmed since no error appears upon the face of the record.

We cannot agree.

The record reflects that the judgment here was rendered June 10, 1949, and on June 17th thereafter, the court, on appellant's oral motion, entered its order granting appellant until July 11th, within which to file his motion for a new trial. Appellant filed his motion on July 6, 1949, well within the time allotted. The record further reflects the following court order: "Now on this 18th day of June, 1949, comes the defendant by his attorneys, Daily & Woods and William K. Harris, and asks permission of the court to be allowed until July 11th, 1949, to file motion for new trial, and the Court, after hearing all the evidence and being well and sufficiently advised in the premises doth grant the defendant until July 11, 1949, to file Motion for New Trial."

It further appears that appellant's reasons for requesting an extension of time were that the court reporter was unable to furnish list of exceptions within the statutory period and that appellant's counsel was busily engaged in other court trials. We find, in the circumstances, no abuse of the trial court's discretion in granting to appellant the extension of time indicated.

In circumstances, similar in effect, to those presented here, we held in the comparatively recent case of *Mis-*

*souri Pacific Railroad Company* v. *Moore,* 199 Ark. 1035, 138 S. W. 2d 384, that the court did not abuse its discretion in extending the time for filing motion for a new trial, but on the other hand that a failure to grant the time requested ''would have been arbitrary and an abuse of discretion.'' See, also, *Metropolitan Life Insurance Company* v. *Thompson,* 203 Ark. 1103, 160 S. W. 2d 852.

Accordingly, the judgment is reversed, and since the cause appears to have been fully developed, it is dismissed.