MISSOURI PACIFIC RAILROAD COMPANY v. CLEO M. CLARK

5-4874                                                440 S.W. 2d 198

Opinion Delivered May 5, 1969

*William J. Smith* and *W. A. Eldredge, Jr. for* appellant.

*Fred Livingston* and *McMath, Leatherman, Woods & Youngdahl* for appellee.

J. Fred Jones, Justice. This is an appeal from a judgment of the Independence County Circuit Court setting aside a jury verdict and granting a new trial, in a personal injury suit brought by Cleo M. Clark against the Missouri Pacific Railroad Company. The question is whether the trial court abused its discretion in setting aside the verdict and granting a new trial.

Cleo M. Clark was employed by Rangaire Corporation at its limestone quarry in Izard County, Arkansas. The Missour Pacific Railroad Company had constructed, and continued to help maintain, a spur track from its main line track through a cattle guard and up-grade to the quarry operations. The railroad company would switch railroad hopper cars from its main line to the end of the spur beyond the loading tipple at the quarry, and the empty cars were then moved by gravity, as they were needed, back to the loading tipple where they were loaded with limestone. After the cars were loaded, they were coupled together in pairs and moved by gravity, two at a time, downhill to where they were left standing on the end of the spur near the main line until they were picked up and pulled away by Missouri Pacific. It was a part of Clark's duties to ride the loaded cars from the loading tipple down to the main track where he coupled them to the loaded cars already set out on the end of the spur.

In removing the loaded cars from the quarry to the main line, they moved by gravity, and Clark rode the front end of the car in front and controlled their speed by the hand brake on the front car. The moving cars were permitted to strike the stationary cars with sufficient force to "make up" the coupling. There was a rather sharp curve in the spur track near a cattle guard close to the main line and the outside rail on this curve was not super-elevated. On the day of Clark's injury, six loaded cars had been set out near the main line and the hand brakes had been set on three of them. As Clark brought two additional loaded cars, coupled together, down the spur track from the quarry, he was riding on the front end of the front car as usual, and as this car struck the first of the six stationary cars, the couplings failed to make proper connection but missed each other completely and as the ends of the two cars came together Clark was caught between the two cars and injured.

Following the accident it was found that the outside rail in the curve on the spur track had twisted over, drawing the spikes from the crossties on the inside of the outside rail and leaving the wheel flanges of the front truck on the outside of the curve resting on the web of the turned rail between the ball and the turned up flange of the rail. The wheels on the opposite side of the truck dropped from the rail on the inside of the curve and three of the crossties were marked by the flanges of the wheels on that side. After the accident the wheels of the truck on the collision end of the stationary car were found in the same position on the rails as were the wheels on the moving car. The drawn spikes, the marked crossties, the twisted rail and the impact between the cars occurred near the cattle guard and on the curve in the track. The physical damage to the track extended from the quarry side of the cattle guard twelve or fourteen feet through the cattle guard to where Clark was removed from between the ends of the two cars.

Clark filed suit against the railroad company for personal injuries alleging negligence in failure to properly elevate the outside rail on the curve, and in failure to properly maintain the track, resulting in the rail twisting over under the weight and normal slow speed of the car and thereby causing the couplers on the two cars to bypass each other upon impact. The railroad company answered by general denial and the allegations of assumption of risk and contributory negligence in Clark's failure to apply proper brake restraint on the moving cars and permitting them to gather more speed than the track was designed to take, and in Clark's failure to align the couplers so that they would properly meet and "make up" on impact and not bypass each other in the curve.

Prior to the trial of the case, the discovery deposition of Clark had been taken and portions of the deposition were copied on separate paper by the railroad company attorney. Clark testified at the trial and parts of his deposition were also read into evidence. Neither actual deposition nor the excerpts therefrom were offered as exhibits in evidence at the trial. During the argument to the jury the railroad company's attorney gave to the jury the excerpts he had prepared from the discovery deposition without first presenting the document to Clark's attorney for inspection or to the court for approval. The instrument presented to the jury contained the same questions and answers that had been read into evidence but not in the same order. No objection was made to this procedure by Clark's attorneys and no instruction or admonition was requested thereon.

The railroad's motion for a directed verdict was overruled by the court, and the jury returned a verdict on interrogatories finding Clark 80% negligent and the railroad company 20% negligent. The jury found that Clark had sustained damages in the amount of $32,-720.00. Clark filed a motion for a new trial alleging prejudice by the placing of the excerpts from the depo-

sition in the hands of the jury and for the further reason that the apportionment of the negligence was contrary to the preponderance of the evidence. The motion for a new trial was granted by order of the trial court in general terms, and on appeal to this court, the railroad company relies upon the following points for reversal:

"I.  *The trial court erred in granting appellee Clark a new trial, because*:

   A.  To affirm the granting of a new trial under circumstances presented by this record would accord trial courts unlimited discretion in setting aside jury verdict.

   B.  Appellant's argument was proper.

   C.  Appellee waived any error in appellant's argument by neither objecting thereto nor requesting a mistrial prior to the jury's verdict.

   D.  Appellee failed to support his motion for new trial by affidavits as required by law.

   II.  *Appellant's motion for a directed verdict should have been granted.*"

The question here is not the amount of discretion *we would accord* trial courts by affirming this case. The question is whether the trial court abused the discretion *it already had* in granting a new trial in this case. We are of the opinion that the trial court did not abuse its discretion.

While the motion for a new trial emphasizes the alleged impropriety of argument the appellant's attorney made to the jury, the motion for a new trial also states as a ground therefor, that the verdict was contrary to the preponderance of the evidence.

The appellate states in its brief that a reading of appellee's motion clearly reflects that appellee sought and received a new trial because of alleged misconduct by appellant's attorney in preparing and presenting to the jury the Xerox copy of portions of appellee's deposition, and the appellant argues that lack of verification as required by Ark. Stat. Ann. § 27-1905 (Repl. 1962) was fatal to appellee's motion for a new trial. We find no merit in this contention. We have read appellee's motion for a new trial, as well as the court's order granting it, and we do not share appellant's conviction that the motion was granted because of alleged improper argument to the jury. The pertinent portions of the motion are as follows:

"(1) The movant was prevented from having a fair trial by reason of irregularity in the proceedings of the court when Mr. William Eldredge, the attorney for the defendant, at the beginning of his closing argument handed to each juror copies of the attached memorandum without first having submitted same either to the court or to the opposing counsel. * * *

(4) The plaintiff further moves for a new trial on the ground that, the answers to the interrogatory dealing with the negligence of Clark and the apportionment of such negligence is contrary to a preponderance of the evidence . . ."

The order granting the motion for a new trial provides:

"On this 27th day of May, 1968, there comes on to be heard the motion of the plaintiff for a new trial under the provisions of Ark. Stats. Sec. 27-1901, and the Court having considered the motion and having heard the arguments of counsel finds that the motion should be granted.

IT IS THEREFORE CONSIDERED ORDERED AND ADJUDGED that the verdicts rend-

ered herein on interrogatories submitted to the jury by the Court should be set aside and that the plaintiff be and he is hereby granted a new trial of the above styled cause.''

As to the preponderance of the evidence, it would serve no useful purpose to quote extensively from the testimony, because we do not go into the *preponderance* of the evidence on which the trial court grants or refuses a motion for a new trial. We do not examine a record to determine what we would have done had we been sitting in the place of the trial judge, we examine the record for a determination of whether the trial court abused his discretion in taking the action he did. The appellee contends in this case that faulty track, under the weight of the cars, was the sole cause of the accident, and the appellant contends that it was solely caused by the excessive speed of the cars being moved by the appellee. Both the appellant and the appellee offered some testimony, and rather substantial circumstantial evidence, tending to sustain their respective theories.

The appellee testified that he brought the cars from the loading tipple to the point of impact at the usual speed of about three miles per hour, and that at the time of the actual impact, the car he was riding on was barely moving. This is controverted to some extent by the physical evidence of damage to the cattle guard, markings on crossties, and inferences the jury could have drawn as to the force of impact. The appellee testified that he was looking down at the couplers as the cars slowly came together and that the couplers simply missed each other. From this testimony, together with the physical and circumstantial evidence following the accident, the jury could have found that the rail had already twisted throwing the couplers out of line before the cars came together. As to what caused the couplers to bypass each other, the appellant offered evidence that the couplers had previously missed each other when they were not properly lined up by hand in preparation

to making a coupling. The evidence is in considerable conflict as to the necessity, and indeed the physical possibility, of manually aligning or moving the couplers to an appreciable degree on the particular new type ball bearing cars involved in this case.

There was evidence in the record that subsequent to appellee's injury, the outside rail at this particular point in the track again twisted under the weight of a loaded car, and Mr. Brodie, a civil engineer, who testified as an expert for the appellee, concluded his testimony as follows:

". . . [I]n this case, I believe there has been millions and millions of tons crossing there and that additional flexure plus this additional curvature plus this lack of super-elevation coming immediately preceding that point makes that a very weak point in the rail; that has been shown not once but twice."

Witness Brodie's testimony is contradicted by Mr. McKeithen, assistant engineer of track for the appellant, who testified that railroad rails break near the ends when they break from flexion, but that he never heard of one twisting over because of weakness caused by flexion. He testified that super-elevation was not necessary on an industrial track and that the degree of curvature on the track involved was within standard for loaded cars moving as fast as fifteen miles per hour.

From all of the evidence in this case, we are of the opinion that there was sufficient evidence of appellant's negligence to go to a jury, and that the trial court did not err in refusing appellant's motion for a directed verdict. See *Hawkins* v. *Missouri Pacific Railroad Company, Thompson, Trustee,* 217 Ark. 42, 228 S.W. 2d 642.

We do not question the sufficiency of the evidence to sustain the jury verdict in this case, for that is not the question before us. Even if the sufficiency of the evi-

dence to sustain the jury verdict were before us in this
case, we would examine it for its substantial nature
rather than weigh its preponderance, for that is the pre-
rogative of the trial judge who sees the witnesses and
hears them testify in law cases.

In the case of *Mueller* v. *Coffman*, 132 Ark. 45, 200
S.W. 136, the trial court in *overruling* a motion for a
new trial, stated that the verdict as returned by the jury
was somewhat of a surprise to him, but as there were
disputed questions of fact for the determination of the
jury, and, though contrary to the judgment of the court
as to what the verdict should have been, he did not deem
it proper to disturb the verdict of the jury. In revers-
ing the trial court and granting a new trial, this court
said:

> "That [trial] court sees the witnesses, hears
> them testify, and is afforded opportunities we can
> not have to weigh the evidence, and the duty, there-
> fore, properly rests with that court to pass upon
> the question of preponderance. In doing this, the
> court, of course, should give proper weight to the
> verdict of the jury and should not set it aside light-
> ly, but if it clearly appears, and the court so finds,
> that the verdict is against the preponderance of the
> evidence, it becomes the duty of the court to set it
> aside. Under the statement of the court, set out
> above, we think the court should have granted a new
> trial, and it will be now so ordered. *Spadra Creek
> Coal Co.* v. *Hager*, 130 Ark. 374, 197 S.W. 705;
> *Spadra Creek Coal Co.* v. *Callahan*, 129 Ark. 448,
> 196 S.W. 477; *Twist* v. *Mullinix*, 126 Ark. 427, 190
> S.W. 851."

In the case of *Blackwood* v. *Eads*, 98 Ark. 304, 135
S.W. 922, this court said:

> "Where there is decided conflict in the evi-
> dence, this court will leave the question of determ-
> ining the preponderance with the trial court, and

will not disturb his ruling in either sustaining a motion for new trial or overruling same. 'The Supreme Court will much more reluctantly reverse the final judgment in a cause for error in granting than for error in refusing a new trial.' *House* v. *Wright,* 22 Ind. 383; *Oliver* v. *Pace,* 6 Ga. 185. The witnesses give their testimony under the eye and within the hearing of the trial judge. His opportunities for passing upon the weight of the evidence are far superior to those of this court. Therefore his judgment in ordering a new trial will not be interfered with unless his discretion has been manifestly abused."

In *McDonnell* v. *St. Louis Southwestern Ry. Co.,* 98 Ark. 334, 135 S.W. 925, this court said:

"... It is not invading the province of the jury for the trial judge to set aside its verdict where there is a conflict in the evidence. On the contrary, it is the duty of the trial court to set aside a verdict that it believes to be against the clear preponderance of the evidence. But it should not, and the presumption is that it will not, set aside a verdict unless it is against the preponderance of evidence. This court will not reverse the ruling of the lower court in setting aside a verdict where there is substantial conflict in the evidence upon which the verdict was rendered, but will leave the trial court to determine the question of preponderance."

In *Twist* v. *Mullinix,* 126 Ark. 427, 190 S.W. 851, the trial court remarked that, in his opinion, the verdict of the jury was against the preponderance of the evidence, but he failed to set the verdict aside. In reversing the decision of the trial court, this court went rather thoroughly into the subject and for that reason we quote rather extensively from that decision:

"... [A]fter the jury has concluded its deliberations and returned its verdict, if there is a mo-

tion for a new trial setting up that the verdict is not sustained by sufficient evidence, or that it is contrary to law, or both, it is then the province of the trial court to review the verdict and to determine whether or not the jury has correctly applied the law as contained in the court's instructions, and whether or not the verdict is responsive to the preponderance of the evidence.

\* \* \* When the trial court becomes convinced that the verdict is not sustained by a preponderance of the evidence, then it is his duty to set aside that verdict. And if the trial court finds and announces that the verdict of the jury is against the preponderance of the evidence on a material issue of fact then he must set aside such verdict. The trial court presides over the trial. He observes and hears the witnesses, and has the same opportunity as the jury in this respect, and that is the reason why it is made his peculiar and exclusive function to determine the issue on a review of the verdict as to whether it is responsive to the preponderance of the evidence in the cause. This court cannot do that for the reason that it has no such opportunity . . .

The rule setting forth the respective functions of the jury and the trial court and this court is well expressed in *Richardson* v. *State,* 47 Ark. 562, 567, where we said: 'But the weight of evidence and the credibility of witnesses are to be determined by the jury. It is the duty of the trial court to set aside a verdict which is clearly against the weight of the evidence. But when the case reaches us, the question is no longer whether the evidence preponderates on one side or the other, or whether due credit has been given to the statements of a witness who has testified fully and fairly. But the question is, whether there is a failure of proof on a material point. To order a new trial because we differ in opinion from the circuit judge as to the

weight of the testimony, or the truth or falsity of a witness, is to substitute our discretion for his discretion. And in this matter he is supposed to enjoy some advantages over us.'

\* \* \*

In *Blackwood* v. *Eads, supra,* we said further: 'Where there is a decided conflict in the evidence this court will leave the question of determining the preponderance with the trial court and will not disturb his ruling in either sustaining a motion for a new trial or overruling same.' \* \* \*

'The witnesses give their testimony under the eye and within the hearing of the trial judge. His opportunities for passing upon the weight of the evidence are far superior to those of this court. Therefore his judgment in ordering a new trial will not be interfered with unless his discretion has been manifestly abused.' See also *McDonald* v. *St. L. S.W. Ry. Co.,* 98 Ark. 334; *McIlroy* v. *Arkansas Valley Trust Co.,* 100 Ark. 596-599.

The only tribunal, under our judicial system, vested with the power to determine whether or not a verdict is against the preponderance of the evidence is the trial court. Where there is a conflict in the evidence and the trial court finds that the verdict, upon a material issue of fact, is against the preponderance of the evidence, the logical and necessary result of such finding as matter of law is that the verdict must be set aside; otherwise, it would be impossible to correct the error."

In *Wilhelm* v. *Collison,* 133 Ark. 166, 202 S.W. 28, this court said:

"We are not called upon to pass upon the legal sufficiency of this testimony to support a verdict based upon it, because the court below granted a

new trial pursuant to the prayer of a motion therefor, which assigned as a ground therefor that the verdict of the jury was contrary to the preponderance of the evidence. We have many times said that the trial court should grant the motion for a new trial when convinced that the verdict of the jury was clearly against the preponderance of the evidence. *Mueller* v. *Coffman,* 132 Ark. 45, 200 S.W. 136; *Twist* v. *Mullinix,* 126 Ark. 427. And when the trial court reaches that conclusion and takes that action we have announced as a rule governing us in our review of that action that 'this court will not reverse a decision of the trial court granting a new trial on the weight of the evidence unless it appears that there has been an abuse of the discretion in setting aside the verdict which is sustained by the clear preponderance of the evidence.' *McIlroy* v. *Arkansas Valley Trust Co.,* 100 Ark. 599. And in the case of *McDonnell* v. *St. L. S.W. Ry. Co.,* 98 Ark. 336, the rule was stated as follows: 'This court will not reverse the ruling of the lower court in setting aside a verdict where there is substantial conflict in the evidence upon which the verdict was rendered, but will leave the trial court to determine the question of preponderance. *Taylor* v. *Grant Lumber Co.,* 94 Ark. 566; *Blackwood* v. *Eads.* 98 Ark. 304.' See also *Clements* v. *Knight & Co.,* 125 Ark. 488, and cases there cited.''

To the same effect is our decision in the very recent case of *Bowman* v. *Gabel,* 243 Ark. 728, 421 S.W. 2d 898. In that case, as in the case at bar, the jury verdict was on interrogatories and the trial court did not invade the province of the jury, nor did he abuse his discretion in granting a new trial.

We find it unnecessary to determine whether the alleged improper conduct of appellant's counsel falls under the first or second paragraph of Ark. Stat. Ann.

§ 27-1901 (Repl. 1962) because the motion clearly alleged cause for new trial falling under paragraph 6 of § 27-1901, that "the verdict ... is not sustained by sufficient evidence ..." and the trial court did not state which ground he granted the motion on.

In *Hall* v. *W. E. Cox & Sons*, 202 Ark. 909, 154 S.W. 2d 19, a jury verdict was rendered in favor of the plaintiff and was set aside and a new trial granted upon the defendant's motion alleging "that the verdict of the jury was contrary to the evidence, contrary to the law, and that errors were committed in giving, and in refusing, certain instructions, and that the verdict was excessive." After a hearing on the motion, the trial court granted defendant's motion for a new trial and set aside the judgment, assigning no specific ground or grounds therefor, and the plaintiff appealed from that order. In affirming the action of the trial court, this court said:

"While the record reflects that the order of the court in granting the motion for a new trial was general in its terms and no specific ground was stated, since the motion for a new trial alleged as a ground the insufficiency of the evidence to support the verdict, we must affirm the trial court's action if it can be supported on this or any other ground set up in the motion.

The rule governing is stated by the textwriter in American Jurisprudence, vol. 3, p. 371, § 829, in this language: 'Where, however, the order is expressed in general terms, without a specification of the grounds therefor, it will be affirmed if it can be supported on any ground alleged in the motion, even though it is one which is discretionary with the court, as, for instance, the insufficiency of the evidence.' "

We find it unnecessary to deal further with the alleged impropriety of the argument to the jury, so we

now return to the only question before us as to whether the trial court abused its discretion in granting a new trial on any ground. As we said in *Hall* v. *W. E. Cox & Sons, supra,* "while the record reflects that the order of the court in granting the motion for a new trial was general in its terms and no specific ground was stated, since the motion for a new trial alleged as a ground the insufficiency of the evidence to support the verdict, we must affirm the trial court's action if it can be supported on this or any other ground set up on the motion."

We conclude that the appellant has failed to show that the trial court abused his discretion in granting the motion for a new trial and we conclude that the judgment must be affirmed.

Affirmed.