GENERAL MOTORS CORPORATION AND
SCUDDER CHEVROLET, INC. *v.* Thomas
Allen TATE, Administrator of the Estate of Marcelyn
C. TATE, Deceased and Thomas Allen
TATE, Individually

74-133                                   516 S.W. 2d 602

Opinion delivered December 9, 1974

*Barber, McCaskill, Amsler & Jones,* for appellant.

*Hall, Tucker & Lovell,* for appellee.

JOHN A. FOGLEMAN, Justice. On this appeal the granting of a new trial after a successful defense of a wrongful death action is brought into question. Review here is complicated by our inability to ascertain the ground or grounds upon which the motion was granted. Ordinarily, the trial court has a wide latitude of discretion in granting or refusing a new trial. *Security Insurance Co.* v. *Owen,* 255 Ark. 526, 501 S.W. 2d 229; *Ellsworth Brothers Truck Lines* v. *Mayes,* 246 Ark. 441, 438 S.W. 2d 724. We do not reverse such an order in the absence of an abuse of that discretion that is manifest or clearly shown. *Security Insurance Co.* v. *Owen,* supra; *Bittle* v. *Smith,* 254 Ark. 123, 491 S.W. 2d 815. Furthermore, the showing of abuse of discretion must be much stronger where, as here, the appeal comes from an order granting a new trial than when a denial is involved. *Security Insurance Co.* v. *Owen,* supra. We have said that when an order granting a new trial is expressed in general terms without a specification of grounds, it must be affirmed if it can be supported on any ground alleged in the motion. *Missouri Pacific Railroad Co.* v. *Clark,* 246 Ark. 824, 440 S.W. 2d 198. *Hall* v. *W. E. Cox & Sons,* 202 Ark. 909, 154 S.W. 2d 19. The motion specified six grounds. The order granting the new trial simply recited that "it is the opinion of this court that justice would best be served by the granting of a new trial. . . " Although we are committed to a review of all grounds of a motion for new trial in such a case to ascertain whether it can be sustained on any grounds, appellee argues that the granting of the motion could be justified on any one of three grounds. No reliance is placed upon any of the other grounds. Those three are:

> I. The trial court erred in refusing a jury instruction requested by appellee which would have permitted him to

recover for breach of warranty.

II. The trial court erred in refusing to give a jury instruction requested by appellee which would have permitted him to recover upon the basis of strict liability.

III. The verdict was not sustained by substantial evidence.

We are confident that appellee would present any other ground upon which he felt that the order could possibly be sustained. Consequently we will review only those grounds which appellee feels are justification for granting this motion. As we do, we must also consider that it is an abuse of discretion to set aside a jury verdict without reasonable cause. *Ellsworth Brothers Truck Lines* v. *Mayes,* supra.

Thomas Allen Tate brought this action against appellant General Motors Corporation and Scudder Chevrolet, Inc. in his capacity as personal representative of his deceased wife, Marcelyn C. Tate in his own right. He sought damages for wrongful death on behalf of the estate and next of kin and for his own personal injuries. He alleged causes of action against General Motors based upon strict liability, breach of warranty and negligence. His complaint against Scudder Chevrolet, Inc., the automobile dealer,was based upon breach of warranty and negligence.

Before their marriage, Tate's wife purchased a 1966 Model Chevrolet Caprice from Chalmers Precise, Jr. about December 18, 1969. Title was placed in Tate and his wife after their marriage. Precise had purchased the automobile, manufactured by General Motors, from Scudder Chevrolet, Inc. on December 13, 1965. Marcelyn C. Tate was fatally injured and Thomas A. Tate injured, on June 2, 1972, when the vehicle, being driven by Tate, went out of control and crashed into a highway sign on Interstate Highway 30 in Saline County. Appellee alleged that the injuries were attributable to an unusual and uncontrolled acceleration of the automobile resulting from a rotation of the vehicle's engine caused by failure of defective engine mounts. Appellant pleaded the statute of limitations and alleged that Tate's own negligence was the proximate cause of the injuries.

At the conclusion of the evidence on behalf of appellee, the dealer's motion for a directed verdict was granted. The grounds for the motion were that there was no evidence of negligence on its part and that the cause of action on breach of warranty was barred by the statute of limitations. Appellant's motion upon the same grounds was denied. Appellant's motion for a directed verdict at the conclusion of all the evidence was likewise denied.

The case went to the jury upon the question of negligence only, the circuit judge having refused to submit the issues of breach of warranty and strict liability by refusing instructions requested by appellee on those issues. A unanimous verdict for appellant was returned. After a hearing on appellee's timely motion for new trial, the circuit judge took the motion under advisement. Later, he advised the parties of his opinion by letter. Thereafter, he denied appellant's motion for a specification of the grounds for granting the motion and entered an order setting aside the jury verdict and granting a new trial upon the vague and general grounds hereinabove set out. By way of clarification the court entered an order stating that the granting of the new trial did not apply to Scudder, but that the directed verdict in its favor should stand. Appellant's motion for a specification of the grounds upon which the motion for new trial was granted was denied.

Turning now to the three potential bases for the circuit judge's action, we will discuss them in order.

## I.

Appellant has contended throughout that any cause of action appellee might have had was barred by the statute of limitations. On the other hand, appellee contends that the cause of action was not barred and that the statute of limitations did not begin to run until the breach was discovered. The parties agree that appellee's allegations and proof constituted the assertion of a cause of action for breach of an implied warranty. They also agree that this cause of action accrues when the breach occurs and the breach occurs when tender of delivery is made. See Ark. Stat. Ann. § 85-2-

725 (Add. 1961). The tender of delivery, insofar as appellant is concerned, was on the date of the sale by the dealer, Scudder Chevrolet Co., to Precise, i.e., December 13, 1965. This action was brought on December 21, 1972. It is evident that more than five years intervened. The action was clearly barred by the failure to bring the action within four years after the cause of action accrued as required by Ark. Stat. Ann. § 85-2-725, unless the action fell within the exception stated in Ark. Stat. Ann. § 85-2-725 (2). That subsection states that a breach of warranty occurs when tender of delivery is made except when a "warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or should have been discovered." It does not seem logical that the Code intended that an *implied* warranty be explicitly extended to future performance. The words "explicit" and "implied" are contradictory. "Explicit" has been defined as meaning express, not implied. Webster's Third New International Dictionary; Webster's New International Dictionary, Second Edition; The Random House Dictionary of the English Language, Unabridged Edition. The exception relied upon by appellee is immediately preceded by the statement that the cause of action accrues when the breach occurs, regardless of lack of knowledge of the breach. It could not have been intended that an implied warranty be an exception, where injury results from a defect in goods, to the general rule. See White - Summers, Handbook on Uniform Commercial Code 341, § 11-8; Anderson Uniform Commercial Code, 2d Ed. 563, § 2-725:24. Other jurisdictions have rejected the contention made by appellee. *Ohio - Val Decker Packing Co.* v. *Corn Products Sales Co.* (6 Cir. 1969) 411 F. 2d 850; *Everhart* v. *Rich's, Inc.,* 128 Ga. App. 319, 196 S.E. 2d 475 (1973); *Constable* v. *Colonie Truck Co.,* 37 A.D. 2d 1011; 325 N.Y.S. 2d 601 (1971); *Moody* v. *Sears, Roebuck & Co.* 344 F. Supp. 844 (D.C., Ga. 1971). See also, *Mendel* v. *Pittsburgh Plate Glass Co.,* 291 N.Y.S. 2d 94 (1967). This conclusion is also consistent with pre-code law in Arkansas. *Peterson* v. *Brown*, 216 Ark. 709, 227 S.W. 2d 142. We do not see how the statute can be construed to bring this action within the exception to the applicable four year statute of limitations, so appellee's cause of action was clearly barred. In spite of the circuit judge's concern about his failure

to submit the cause of action on breach of warranty to the jury, expressed when he took the motion for new trial under advisement, a new trial was not granted against the automobile dealer. It seems to us that the same evidence and the same warranty applied to both the dealer and the manufacturer. Be that as it may, the failure to give the requested instruction could not have afforded a basis for granting a new trial.

## II

Appellee contends that Act 111 of 1973 [Ark. Stat. Ann. § 85-2-318.2 (Supp. 1973)] providing for strict liability was applicable to this case in spite of the fact that the cause of action accrued and the action was commenced prior to the effective date of the act. We had steadfastly refused to adopt the doctrine of strict liability in cases such as this by judicial action. Appellee contends that the legislative act providing for strict liability was intended to have retrospective effect as shown by a clause stating that it is remedial in nature. Furthermore, says appellee, the act did not create new rights but merely gave an additional remedy. We are unable to accept this argument. Strict liability is a new theory of recovery in a case of this sort. It is a liability imposed by statute. It confers upon a plaintiff the right to recover damages upon a theory and under circumstances where a cause of action did not formerly exist. See Frumer & Friedman, Products Liability, 3-237, § 16A [1]; Restatement of Torts, 2d Ed., § 402A Comment m, Prosser, The Assault upon the Citadel (Strict Liability to the Consumer) 69 Yale Law Journal 1099, 1134 (1960); Annot, Products Liability, 13 A.L.R. 3d 1057, 1074 (1967); *Greenman* v. *Yuba Power Products, Inc.,* 27 Cal. Rptr. 697, 377 P. 2d 897, 901 (1963). Before the adoption of the act, appellee could have only recovered by proving negligence or a breach of warranty. After the passage of the act, for one in appellee's position, neither negligence nor breach of warranty would be an essential ingredient of the cause of action on strict liability. Thus a new cause of action exists and a new liability is imposed. Any doubt about the legislative intent in this regard may be resolved by resort to the title of the act which reads, "An Act to Impose Liability for Injury and Damages Done in Certain Circumstances by Defective Products, and for Other Pur-

poses." The mere statement that the act is remedial does not overcome the presumption against retrospective effect.

## III

Appellee's action for negligence was based upon an allegation that the motor vehicle he was driving and in which his wife was a passenger at the time of their injuries was equipped with engine mounts that were defectively designed in such a way that upon failure of an engine mount the engine was allowed to rotate or move within the engine compartment, thereby causing the engine to speed up, or preventing it from slowing down, because of interference with the throttle linkage system. In this respect, we must review the testimony of Tate as to how the accident of June 2, 1972 occurred. It is substantially as follows:

On the Sunday in question he and his wife had planned to go to Hot Springs and sell the car, which then had been driven approximately 66,000 miles and for which he had previously received from appellant a recall notice for correction of a possible safety hazard which would exist if separation of an engine mount should occur on the vehicle. The Tates had had no problem or difficulty with the automobile. It was in excellent condition. They proceeded normally along the highway until they reached the point where the highway branches, with the Interstate highway going to Malvern and another fork otherwise designated going to Hot Springs. Tate was driving at approximately 70 miles per hour, his customary speed on the Interstate highway. He took his foot off the accelerator in order to decrease the speed of the vehicle so that he could make a turn to the right to the Hot Springs highway. He removed his foot completely from the accelerator and the speed of the vehicle decreased normally, as he would expect, for one or two seconds. It then seemed as if the vehicle went into passing gear, jerking forward. The speed of the car then accelerated and Tate tried to put his foot on the brake. He heard a roaring noise as if he had the accelerator pressed all the way down with his foot on the brake. He believed that he put both feet on the brake trying to stop

the vehicle. The steering wheel locked, as if one had turned the key on a later model car to the "off" position, so that Tate could not turn it. Tate saw a roadside sign looming up in front of him but did not remember hitting it. The vehicle struck the sign, was severely damaged, Marcelyn Tate was killed and Tate suffered severe injuries. He said that the automobile was equipped with factory air conditioning.

There is no doubt that the left motor mount had failed by fatigue prior to the impact of the automobile with the sign post. The question was whether the fatigue failure of the left motor mount could have been the proximate cause of the accident and damages. All of the witnesses on this point were experts. Two of them were called by appellee and two by appellant. All agreed that a failure of this motor mount could, under certain conditions, permit the engine on this model of Chevrolet to rotate in such a manner as to interfere with the throttle linkage. There are certain factors, however, that clearly show that this could not have happened in this instance. Ellis McCorkle, one of appellee's experts, testified that when the engine is accelerated, its torque tends to lift it from the left mount putting it in tension and putting the right mount into compression. He said that the motor could move out of position so that the accelerator linkage is affected and jammed into full acceleration by pulling the carburetor into full open position and that, if you took your foot off the pedal, it is still in the jammed position, even though the motor would be racing. He theorized that the engine in the Tate vehicle had rotated and locked the accelerator into a high speed position so that if Tate took his foot off the accelerator pedal it didn't affect the application of the gas to the motor and the motor continued to race. This, of course, is not consistent with Tate's testimony that when he removed his foot from the throttle, the speed of the vehicle decelerated.

Joe Harris, the other expert called by appellee, was of the opinion that motor mount failure was the cause of the accident, or at least triggered the events which culminated in the accident. He said that apparently when the driver of the Chevrolet asked the car to slow down, it did partly, but not

totally. He said that something caused the engine to continue to deliver power while the brakes were applied and the only thing that anybody could find on this car that might have been the cause of it was the defective motor mounts. He could not recall whether the car had air conditioning or not, but admitted that an air conditioning unit could introduce some restraint to the engine motion which might limit it somewhat, but he did not think that it was a prime consideration and did not take into consideration whether or not the vehicle had air conditioning when he was making his examination of it. He said that a forward movement of the engine would cause an increased acceleration by pulling the carburetor away from the accelerator, and he thought such was likely in this case, but thought there had been a twisting motion at one point in time. He said that the only time one had any problem with a separated motor mount is in low gear, on a sharp left turn or when driving down the road at 70 miles an hour and hitting a little bump. He recalled a bit of a left turn before the point of the accident (but Tate did not). He said that the road was not perfectly level.

Richard Maiers, an engineer who was employed by General Motors Corporation, testified as an expert. He said that the engine mount phenomenon associated with Chevrolet vehicles is one in which the engine will want to lift off the mount, if the left engine mount should, by reason of fatigue, impact or any other cause, become separated into two individual parts, which had happened at some time. He stated that engine lift could only occur under particular circumstances when the transmission is in first gear but under no circumstances could you have engine lift in anything except when the automobile was in the low gear. In first gear, by accelerating from a stop with the throttle all the way to the floor, the shift of first gear will occur at about 48 miles per hour. Engine lift could be maintained only up until the vehicle reached a speed of 40 miles per hour at which time the engine would fall back due to its own weight onto the left engine mount. One of the secondary effects of the separation of the left engine mount when there was significant engine rotation to the right could result in holding the throttle rod in the position the driver put it in under the proper conditions. However, he said that this will not cause increased accelera-

tion. The effect, according to him, is merely to hold the throttle in the position it is already in by pushing hard enough on its side. He said that this occurs in low gear only. This, he said, had no effect on the steering system of the vehicle. This witness testified that the air conditioner compressor support bracket on this automobile limited the amount of engine movement in the automobile. The amount of engine lift or displacement permitted by the air conditioner is not sufficient to cause any of the secondary effects such as would affect the throttle or brakes and, with the air conditioning unit, the Tate vehicle could not have had an acceleration problem at any speed due to a separated engine mount, according to this witness.

Henry H. Hicks, Jr., a teacher in the mechanical engineering department of the University of Arkansas also testified that the stuck throttle phenomenon could not be possible on the Tate vehicle with the air conditioner in place.

No one attempted to contradict this testimony. Of course, one of the witnesses was an employee of appellant and the other employed for the purposes of this trial. Their testimony went to the matter of physical impossibility of the accident happening as Tate related being the result of the defective left motor mount. If this were not the case, surely the experts who testified for appellee could have shown that it was not.

There was really no reason why the testimony of these witnesses should be totally discarded. In a long line of cases we have said that when the testimony of one employed by a defendant in an action is not substantially contradicted by any testimony, fact or circumstance, and does not seem unreasonable or improbable, the jury cannot arbitrarily or capriciously disregard his testimony, and we have reversed judgments where this was done, and, where the case was fully developed, have dismissed the action. See *St. Louis, San Francisco Ry. Co.* v. *Williams,* 180 Ark. 413, 21 S.W. 2d 611; *St. Louis, San Francisco Ry.* v. *Cole,* 181 Ark. 780, 27 S.W. 2d 992; *Missouri Pacific Railroad Co.* v. *Hancock,* 195 Ark. 414, 113 S.W. 2d 489; *East Texas Motor Freight Lines, Inc. et al* v. *Dennis et al,* 214 Ark. 87, 215 S.W. 2d 145. In such a case we have held

that where there is not sufficient evidence upon which to predicate a finding of negligence without arbitrarily disregarding testimony of such witnesses in favor of a theory equally hypothetical, a judgment against a defendant should be reversed and dismissed. *St. Louis, San Francisco Ry. Co.* v. *Pace*, 193 Ark. 484, 101 S.W. 2d 447; *Missouri Pacific Railroad Co.* v. *Ross*, 194 Ark. 877, 109 S.W. 2d 1246. Where it is impossible for a jury to have harmonized discrepancies in testimony without eliminating impossibilities and have substantial evidence upon which to predicate a verdict, this court will reverse a judgment on such a verdict. *Missouri Pacific Railroad Co.* v. *Hancock*, supra; See also *Ellsworth Brothers Truck Lines* v. *Mayes*, 246 Ark. 441, 438 S.W. 2d 724.

Since the testimony of Harris and Hicks was unaffected by conflicting inferences which might be drawn from it, and was not improbable, extraordinary or surprising in nature, there was no reason for denying the jury's finding of verity dictated by it. *Knighton* v. *International Paper Co.*, 246 Ark. 523, 438 S.W. 2d 721. There is a presumption that the trial court will not set aside a verdict that is not against the preponderance of the evidence when there is substantial conflict in the evidence, but that presumption does not apply in the absence of such a conflict. It is clear to us that the air conditioning unit was in place on the Tate vehicle and that the motor could not have rotated sufficiently to have interfered with the throttle linkage. It is clear that the decrease in speed of the vehicle when Tate took his foot off the accelerator is a clear indication that the rotation of the motor did not interfere with the throttle linkage.

It is also significant that McCorkle's testimony is not consistent with Tate's version of the accident. Under these circumstances we have concluded that it was not possible that this accident could have resulted from the failure of the left motor mount of the Tate vehicle. Thus there was no substantial evidence upon which the jury could have based a verdict against appellant. Since there was no substantial conflict in the evidence on these critical points the trial court could not have properly granted a new trial because the verdict was against the preponderance of the evidence.

In our consideration of this case, we have reviewed other such cases wherein the trial court has granted a motion for new trial without specifying the grounds for its decision. These cases always present perplexing problems in appellate review, not only to the appellate court in exploring every possible facet of the case to determine whether there has been an abuse of the trial court's discretion, but to attorneys on both sides who have to brief the case. We have, in this case, assumed, properly we think, that the attorneys for appellee would, beyond doubt, present any ground upon which the action could be sustained. Even this approach is far from satisfactory, and only tends to add to the evergrowing burden of this court. Consequently, we are promulgating a rule governing the granting of motions for new trial in the future, which will tend to eliminate this problem and thereby improve the administration of justice. It is generally conceded that, in the interest of good practice and the proper dispatch of judicial business, courts should specify in orders granting new trials, with particularity the grounds on which the order is made. 58 Am. Jur. 2d 437, New Trial § 214; 66 C.J.S. 533, §210 (3) (a). The Appellate Court of Indiana met the problem headon when it was first confronted with it. See *Rife* v. *Karns*, 133 Ind. App. 226, 181 N.E. 2d 239. See also *Pensacola Chrysler-Plymouth, Inc.* v. *Costa*, 195 S. 2d 250 (Fla. 1967); *Morton* v. *Staples*, 141 S. 2d 806 (Fla. App. 1962); *Simmons* v. *Koeteewaw*, 5 Wash. App. 572, 489 P. 2d 364 (1971); *Mulka* v. *Keyes*, 41 Wash. 427, 249 P. 2d 972 (1952); *Brooks* v. *De La Cruz*, 12 Ariz. App. 591, 473 P. 2d 793 (1970); *Heaton* v. *Waters*, 8 Ariz. App. 256, 455 P. 2d 458 (1968); Rule 59, Federal Rules of Civil Procedure.

The rule we are promulgating by per curiam order is based to some extent upon the action of other courts.

Since we have found no ground which could have supported the granting of a new trial, we reverse the order and dismiss the action.